**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-3601

JOSE L. CASTILLO AND,
MARIA L. CASTILLO,

Plaintiffs-Appellees,

VERSUS

MONTELEPRE, INC., a/k/a
Montelepre Memorial Hospital,
LUIS R. OMS, M.D., ET AL.,

Defendants,

LOUISIANA PATIENTS'
COMPENSATION FUND,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

(August 23, 1993)

Before KING, HIGGINBOTHAM and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this case we review, principally, the district court's application of Louisiana's Medical Malpractice Act, La. Rev. Stat. Ann. § 40:1299.41 - 1299.47 (West 1992) (the "Act" or "statute").

## I. The Medical Malpractice Act

Louisiana has established a statutory scheme for the prosecution of medical malpractice claims against qualified health care providers. Health care providers who choose to comply with certain of the statute's provisions become qualified under the statute and subject to its procedures and protection. See Id § 40:1299.42 (A).

The protection afforded qualified providers is a limitation on liability exposure to no more than $100,000, plus interest, on malpractice claims. Id. § 40:1299.42 (B)(2). Any amount owing from a judgement or settlement in excess of the total liability of all qualified providers on a malpractice claim is to be paid from the Patient's Compensation Fund (the "Fund"). Id. § 40:1299.42 (B)(3)(a).

The statute also provides for limitation on the Fund's exposure. The total amount recoverable from the Fund is limited to $500,000, plus interest and cost, exclusive of damages for future medical care and related benefits. Id. § 40:1299.42 (B)(1).

In the event a qualified provider settles for its $100,000 policy limits, its liability becomes "admitted and established" for the purposes of any subsequent action by the malpractice victim against the Fund for additional compensation. Id. § 40:1299.44 (C)(5). As a consequence, the statute precludes the Fund from contesting the settling provider's liability in any such action. Id.; Koslowski v. Sanchez, 576 So. 2d 470, 471 (La. 1991). The

2

only issue the Fund is allowed to litigate under the statute is the quantum of the victim's damages.[1] <u>Koslowski</u>, 576 So. 2d at 471.

In light of the forgoing, we review the facts material to our decision today.

## II. Facts

Mrs. Castillo and her husband sued three Louisiana health care providers for malpractice because of injuries she suffered while receiving treatment for a liver condition. Two of the providers, Dr. Oms and Montelepre Memorial Hospital, are qualified under the Medical Malpractice Act. The other provider, Dr. Gordillo, is not.

The Castillos subsequently entered into settlements with all three providers. In their settlement with Montelepre, Montelepre agreed to pay its $100,000 statutory limits, and the Castillos reserved their right to seek excess compensation from the Fund. Pursuant to the statute, the Castillos requested the district court to approve their settlement with Montelepre.

Before the court could give its approval, the Fund intervened. It sought to challenge the settlement and prevent Montelepre from paying its statutory limits, which would preclude the Fund from raising the issue of Montelepre's liability in the Castillo's forthcoming suit for additional compensation. The court denied the Fund's challenge, concluding that the Fund had no right to challenge a settlement between a qualified provider and a malpractice victim. Having denied the Fund's challenge, the court approved the Castillos/Montelepre settlement.

---

[1] <u>But</u> <u>See</u> § 40:1299.44 (D)(2)(b)(x) & (xi).

From this point forward, the Fund repeatedly and unsuccessfully implored the district court to allow it to litigate Montelpre's liability at the upcoming trial of the Castillos' damages. Anticipating the Fund's trial strategy, the Castillos filed a motion in limine seeking to exclude any evidence pertaining to Montelpre's liability. The Fund opposed the motion, contending that it had the right to prove the proportionate fault of the three providers and reduce the Castillos' damages by whatever measure the jury portioned out to Dr. Gordillo. The district court rejected the Fund's contention and granted the Castillos' motion.

On the eve of trial, the Castillos filed a motion for summary judgment. Both parties stipulated to facts material to the only issue to be tried before the jury, the amount of the Castillos' damages.[2] Based on these stipulations, the court entered judgment awarding the Castillos, *inter alia*, $500,000 in general damages, plus interest, subject to a $200,000 credit in favor of the Fund because of Dr. Oms and Montelepre's settlements, and $280,000 in past medical expenses.

Shortly thereafter, the Fund filed its notice of appeal. That same day, the court signed an order, over the Castillos' objection, exempting the Fund from posting a supersedeas bond during the pendency of its appeal. The Castillos subsequently filed a cross appeal challenging the court's stay of execution.

---

[2]As we read the these stipulations, the Fund admitted that the Castillos' general damages were "at least the total sum of $500,000." It also admitted that the expenses incurred by the Castillos for past medical expenses were $280,000.

Against this factual backdrop, we address the issues raised by the parties in this case.

### III.   Discussion

#### A.   The Settlement Challenge

In its second point of error, the Fund argues that the district court erred by not allowing it to challenge the settlement between Montelepre and the Castillos and thereby force the litigation of Montelepre's liability.  At the heart of the matter, the Fund contends, is its right to challenge a settlement between a malpractice victim and a qualified provider in every instance where the provider's insurer pays its $100,000 policy limits.  It tries to support this argument on two grounds: the language of section 40:1299.44 (C)(3) and the duty imposed on the provider's insurer under section 40:1299.44 (C)(7).

The relevant portion of section 40:1299.44 (C)(3) reads as follows:

> The board and the insurer of the health care provider ... may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider ... may file written objections to the payment of the amount demanded.

Paragraph (C)(3) must be read in the complete context of section 40:1299.44 (C).  This section provides the procedure when a qualified provider's insurer has agreed to settle its insured's liability and the victim demands from the Fund, for a complete and final release, amounts in excess of the settlement. Id. § 40:1299.44 (C).  Assuming the settlement was for the provider's $100,000 policy limits, the liability of the insured has already

become "admitted and established." Id. § 40:1299.44 (C)(5). The only remaining issue, therefore, is whether the Fund will agree to pay the excess amount the claimant is demanding for his damages.

The Fund has two choices: either agree to the amount demanded or litigate the sole issue of the claimant's damages. Id. § 40:1299.44 (C)(3) & (5). If it chooses not to pay the demanded amount, then subparagraph (C)(3) allows the Fund to file written objections "to the amount demanded" and thereby force the litigation of the claimant's damages. Stuka v. Fleming, 561 So. 2d 1371, 1373 (La. 1990). In the latter instance, the only issue to be litigated is the quantum of the claimant's damages. Id. at 1374. Importantly, this inquiry has nothing to do with liability; that issue was conclusively resolved between the provider's insurer and the claimant when the insurer agreed to settle for its $100,000 policy limits. Id. The written objections, therefore, provide the vehicle through which the Fund puts into issue, between itself and the claimant, only the amount of the claimant's damages and not the provider's liability.

We therefore hold that the district court was correct in ruling that nothing in the language of section 1299.44 (C)(3) allowed the Fund to challenge the settlement between Montelepre and the Castillos.

The Fund next asserts that allowing it to challenge the underlying settlement between a health care provider and a malpractice victim affords it the opportunity to determine whether the health care provider's insurer discharged its duty of good

6

faith and reasonable care in evaluating and settling the victim's claim. See Id. § 40:1299.44 (C)(7). It asserts that this opportunity is particularly acute in this case because Montelepre's insurer paid the $100,000 under a mistaken belief that it was settling two $50,000 claims rather than one $100,000.[3]

The relevant part of paragraph (C)(7) reads as follows:

> For the benefit of both the insured and the [Fund], the insurer of the health care provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. . . .

---

[3]The Fund's position early in the life of this litigation was that it was unfair for the Fund to be denied the opportunity to contest liability simply because Montelepre's "insurer chose to not defend the claim and run up litigation expenses in light of the maximum exposure of $100,000." This representation was consistent with its claim that "the malpractice alleged arises from a single patient, being treated for a single condition." Indeed, the Fund managed to convince the district court that the case involved only one instance of malpractice and that the statute limited the Castillos' claim to only one $500,000 pot rather than the two the Castillos were seeking.

Thereafter, the Fund represented to the court that because Montelepre's insurer believed "that it was exposed to an amount well in excess of $100,000," it "rash[ly] ... jumped at the opportunity to wash its hands of the case and simply tendered $100,000 without any thought that such an act would lock the Fund into liability." This representation was in furtherance of the position it presses before the court today, namely, that Montelepre's "insurer considered itself to be settling two separate claims, each of which for $50,000."

In response to this latest version of the facts, the district court stated, "The settlement of this claim, however, was consummated after the court's order of approval which specifically stated that Montelepre's maximum exposure was $100,000, and that the settlement for this amount locked the Fund into liability for the excess. Thus, this Court is unclear how the settlement could have been based on any misapprehension on the part of Montelepre or its insurer."

Based on a thorough review of the record, we find the Fund's "mistaken belief" claim to be disingenuous.

Rather than supporting Fund's argument, we believe the imposition of this duty weighs against it. Why would the legislature have imposed upon the insurer, for the benefit of the Fund, a duty of good faith and reasonable care in its decision to settle a claim if the Fund has the greater right to challenge any settlement that would lock it into liability? In other words, with what benefit does this duty provide the Fund that it would not necessarily enjoy by having the right to challenge any settlement that would lock it into liability? To read into the statute the Fund's right to challenge any such settlement would be to render the duty imposed under paragraph (C)(7) of no practical significance.[4]

Consequently we hold that nothing in section 40:1299.44 (C) or any other part of the statute allows the Fund to challenge a proposed settlement between a malpractice victim and a health care provider, and the district court correctly denied the Fund's attempt to do so. The Fund's second point of error is overruled.

B.    The Apportionment Issue[5]

The district court granted the Castillo's motion in limine precluding the Fund from offering any evidence concerning the

_____

[4]We also agree with the district court's response to this argument that even though the Fund is the beneficiary of an insurer's duty of good faith and reasonable care, this does not mean that the Fund has the right to litigate the discharge of such duty in an action between a provider and a victim.

[5]After taking its appeal, the Fund filed a motion requesting that we certify a question to the Louisiana Supreme Court on this issue. We hereby deny the Fund's motion for certification in light of conclusions reached in this opinion.

liability or proportionate fault of Montelepre, Dr. Oms and Dr. Gordillo at the trial of the Castillos' damages. The court decided, based on Stuka v. Fleming, 561 So. 2d 1371 (La. 1990) and Muphrey v. Gessner, 581 So. 2d 357 (La. App., 4th Cir., 1991), cert. denied, 587 So. 2d 694 (La. 1991), that once the Fund's liability was established by Montelepre's payment of $100,000, the Fund did not have the right to litigate the liability of any purported tortfeasor; the only triable issue was the quantum of the Castillos' damages.

In its first point of error, the Fund contends this was error. While admitting that the "issue of Montelepre Hospital's liability is established by the settlement with Montelepre," the Fund nevertheless contends that it has the right to prove the proportionate fault of Dr. Gordillo, a non-qualified health care provider, and to reduce its maximum statutory exposure in proportion to the percentage of fault attributed to Dr. Gordillo. In essence, the Fund contends that Montelpre's payment of $100,000 establishes only Montelepre's liability and not that of Dr. Gordillo.

In support of this contention, the Fund argues that Stuka and Muphrey are materially distinguishable from the case at bar. Accordingly, we review the relevant portions of these decisions.

In Stuka, the court was faced with facts materially similar to ours. A malpractice plaintiff sued four qualified health care providers, their insurer, and the Fund. Before the case could be brought to trial, the insurer paid $100,000 to settle the claim

9

against one of the providers and his employer. The plaintiff agreed to release the insurer and the two defendants while reserving its right to recover excess compensation from the Fund. The plaintiff also agreed to dismiss with prejudice its claim against the remaining two providers. The district court subsequently entered a judgment approving the settlement.

Thereafter, the Fund filed an answer asserting its right to litigate the issue of liability based on its contention that the $100,000 payment did not constitute an admission of liability for all four defendants. The plaintiff moved to strike the Fund's opposition to the court's considering the settlement as an admission of liability.

The district court rendered a judgement in favor of the plaintiff, ruling that the settlement constituted an admission of liability as between the plaintiff and the Fund. The court of appeal reversed, concluding that because the insurer had not paid $100,000 on behalf of each of the four providers, the issue of liability could be litigated by the Fund.

In reversing the court of appeal's decision, the supreme court framed the issue and its holding as follows:

> The issue in this case is whether ... (the Fund) ... may contest its liability to a medical malpractice victim who has compromised his claim against one health care provider for $100,000, while voluntarily dismissing others, and is seeking recovery against the Fund of damages in excess of the settlement amount. We conclude that payment of $100,000 to a medical malpractice victim by one qualified health care provider (or the provider's insurer) triggers the admission of the liability provision of [section 40:1299.44 C(5)], and the only

10

contested issue remaining thereafter between the victim and the Fund is the amount of the victim's damages in excess of the amount already paid.

Stuka, 561 So. 2d at 1371.

In reaching this conclusion, the court reasoned as follows:

> The statute does not make any express provisions for a case in which multiple health care providers have been joined as defendants and only one pays $100,000 in settlement. We interpret the overall statute as dispensing with the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in settlement.
>
> A suit under the Medical Malpractice Act is against the health care provider only and not against the Fund. The health care provider is the only party defendant contemplated by the Act. (citation omitted) Indeed, the statute does not require joining the Fund as a defendant, but only requires serving the administrator of the Fund with the petition for approval of the settlement when a health care provider has agreed to settle its liability to the malpractice victim.
>
> The status of the Fund, after a settlement between the malpractice victim and a health care provider for $100,000, is more in the nature of a statutory intervenor than a party defendant. . . .
>
> The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages. Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
>
> We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable.

11

> But in the case of a settlement with one [qualified] health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.
>
> We accordingly conclude that, because of the payment of $100,000 by Dr. Jones' insurer in this case, the only issue to be litigated between plaintiffs and the Fund is the quantum of damages.

Stuka, 561 So. 2d at 1373-74 (emphasis added).

In Muphrey v. Gessner, 581 So. 2d 357 (La. App. 4th Cir. 1991), a malpractice plaintiff sued two qualified providers, their insurer, and two other qualified providers. Before the case was brought to trial, one of the providers paid its statutory limits of $100,000 in exchange for a release from the plaintiff. The court approved the settlement. The plaintiff also dismissed without prejudice the remaining defendants and sought recovery from the Fund for excess damages.

The Fund filed a third party action against two of the dismissed providers, seeking contribution and a credit against the plaintiff's recovery. The Fund argued that it was entitled to a credit to the full extent of the statutory limits of liability of the two providers, due to their alleged negligence.

Thereafter, the plaintiff sought and received a summary judgement concluding that the $100,000 payment by the one provider constituted a statutory admission of liability, thereby making the only issue between the Fund and the plaintiff one of damages. The

12

trial court also severed the plaintiff's claim for damages from the Fund's contribution and credit action.

Subsequently, the plaintiff and Fund settled the damage claim, leaving the Fund's action against the other providers as the sole surviving claim from the original action. Thereafter, one of the providers moved for summary judgement, asserting that the Fund had no right to seek contribution. The trial court granted the motion and dismissed the Fund's action against the provider. The Fund appealed.

The Fund asserted its right to contribution on two grounds: (1) as an obligor which has paid a debt owed by the provider, the Fund is subrogated to the rights of the plaintiff against the provider under La. Civil Code art. 1829; and (2) public policy mandates that the Fund have the right to recover $100,000 from both of the allegedly negligent providers in order to protect the fiscal integrity of the Fund. The fourth circuit disagreed.

The court concluded that the Louisiana Supreme Court's decision in Stuka was dispositive. Muphrey, 581 So. 2d at 360. It paraphrased the holding in Stuka for the proposition that the Fund cannot litigate the issue of liability in order to receive contribution from other health care providers. In reviewing the basis for this holding, the court stated that after a qualified health care provider settles with the malpractice victim for its statutory limits, "the status of the Fund is more in the nature of a statutory intervenor than a party defendant." Id. (citation omitted) So at that point, the only issue between the Fund and the

13

victim is the quantum of the victim's damages. Id. The court went on to quote key portions of the Stuka opinion, including the following: "However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider *and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers*." Id. (emphasis in original)

The Fund argued that Stuka was distinguishable because in the case before the fourth circuit there was no longer any litigation between the Fund and the victim; the victim had received $200,000 in settlement with the Fund. The court found the distinction to be immaterial in light of the Stuka court's declaration that "the statute does `not provide for the Fund's affirmative right to litigate liability on the part of any named or unnamed health care providers.'" Id. Even though the victim is no longer involved in the suit, the liability of the provider to the victim would still have to be litigated, the court reasoned. Therefore, it concluded that the Fund was precluded from litigating the issue of the liability of a non-contributing health care provider once there has been a settlement for $100,000. Id.

The court proceeded to reject the Fund's subrogation argument, concluding that the Fund is not a co-obligor with liable health care providers. Id. It noted that case law interpreting the Medical Malpractice Act has found that "the position of the [Fund] is *sui generis*; it is a creature of statute and has only those

14

rights expressly given to it be the legislature." Id. Accordingly, the court noted that the Louisiana Supreme Court had already declared that the Fund is not a negligent party and does not have the status of an Article 2315 defendant. See Williams v. Kushner, 449 So. 2d 455, 458 (La. 1989). Furthermore, the court recalled how it had earlier decided that the Fund did not have the right enjoyed by party defendants to urge the defense of prescription. See Kelty v. Brumfield, 534 So. 2d 1331, 1334 (La. App. 4th Cir. 1988). In articulating the rational for its decision, the court again reiterated that the legislature has reserved to the Fund only the right to contest the amount of a victim's damages and nothing more.

Finally the court addressed the Fund's policy argument. The court concluded that the fiscal integrity of the Fund is adequately protected by the statute which created it, without having to grant the Fund a right to contribution not contemplated by that statute. Muphrey, 581 So. 2d at 361.

Applying Stuka and Muphrey to the case at bar, we are left with the following conclusions. Once Montelepre settled with the Castillos for $100,000, its liability to the Castillos became statutorily established such that the Fund was precluded from contesting Montelpre's liability. More importantly, Montelepre's payment of its statutory limits also precluded the Fund from litigating the liability of Dr. Gordillo. Consequently, the Fund lacks the authority to apportion fault amongst the defendants and reduce its liability to the Castillos by Dr. Gordillo's share. The

15

only issue the Fund is permitted to litigate in the Castillos' action for damages is the amount of damages the Castillos have suffered.

The Fund argues that <u>Stuka</u> and <u>Muphrey</u> are distinguishable because here, the Fund would be held liable for the acts a of non-qualified provider. The Fund points out that a non-qualified provider is not protected by the Act, and concomitantly, that the Fund is not responsible for his conduct. From this the Fund reasons that it must necessarily have the right to determine a non-qualified provider's percentage of fault and reduce its exposure by that amount. This right, the Fund argues, enables it to protect its fiscal integrity.

We agree that <u>Stuka</u> and <u>Muphrey</u> are distinguishable from the case at bar. However, a careful analysis of these cases reveals the distinction to be immaterial. The courts in <u>Stuka</u> and <u>Muphrey</u> arrived at their holdings by analyzing the statute to determine the rights of the Fund as a creature of the legislature. In both cases, the courts determined that the status of the Fund was such that it lacked the statutory authority to litigate liability issues. The analytical approach taken by the courts in these cases properly focused on the status of the Fund. In point of fact, it is the status of the Fund that was determinative in both cases.

Taking this same analytical approach, we also consider the status of the Fund to be determinative. The status of the Fund as a defined creature of the legislature is such that it lacks the authority under the statute to apportion fault amongst providers

16

and reduce its liability by the non-qualified provider's share.  We find nothing in the statute or interpretive case law to indicate that the status of a provider as unqualified under the statute should affect this conclusion.  More specifically, the fact that one provider is not qualified does not expand the Fund's authority beyond that which is expressly stated in or honestly implied from the language of the statute.  Consequently, we consider that fact to be immaterial.

Examining the Fund's argument from this perspective reveals it to be basically the same public policy argument it pressed in Muphrey: allowing the Fund to litigate the fault of a provider and thereby reduce the Fund's exposure protects the fiscal integrity of the Fund.  And although the statute and case law make clear that a provider must be qualified under the Act to be subject to its protection, we are unwilling to read into the statute the Fund's affirmative right to litigate liability issues once a qualified provider pays its statutory limits.  Thus, the Fund's first point of error is overruled.[6]

---

[6]The Fund raises several additional arguments that we find to be insupportable.  One such argument relies upon articles 1803 and 1804 of the Louisiana Civil Code which address the rights and benefits afforded remaining solidary obligors when a co-obligor is released from liability to an obligee.  However, the status of the Fund is such that it is not a co-obligor with liable health care providers. Muphrey, 581 So. 2d at 360.

Another argument asserts that the Louisiana legislature has "confirmed" that the Fund is only responsible for the damages caused by a qualified health care provider by adding items (x) and (xi) to section 40:1299.44 (D)(2)(b).  Item (x) provides the Fund with the right to defend itself from malpractice claims for which a non-qualified provider may be partially liable.  Item (xi) allows the Fund to obtain indemnity and reimbursement of all amounts for which the non-qualified provider may be liable.

C.    Interest on the Credit

As indicated above, the district court awarded the Castillos legal interest on their entire $500,000 general damage award even though it credited the Fund $200,000 because of Dr. Oms and Montelepre's settlements.  In its third point of error, the Fund challenges the court's interest award by arguing that the court improperly held the Fund liable for interest on the $200,000 credit.  Its first argument in support of this position relies on the terms of the statute.

Section 40:1299.42 (B)(1) indicates that the total amount a malpractice victim can recover from the Fund, exclusive of future medical care and related benefits, "shall not exceed Five Hundred Thousand Dollars plus interests and cost." (emphasis added). Section 40:1299.42 (D)(5) provides for the Fund to receive a credit

---

We note that the Fund became statutorily liable for the Castillos' excess damages on March 27, 1991, the day the district court approved the Castillo/Montelepre settlement.  The effective date of the amendment at issue is September 6, 1991.

Furthermore, we do not consider this amendment to constitute a confirmation of any rights the Fund possessed at the time it became liable.  Rather, we view the inclusion of these provisions to create in the Fund rights that are substantive in nature and effect and additional to those rights that were expressly and impliedly contained in the statute at the time of the Fund's liability.

Finally, the Fund asserts that the right of apportionment only comprehends apportioning damages and not liability.  Thus, the Fund argues that if allowed to apportion damages, it would not be litigating liability issues.  This argument is completely fatuous.  Dr. Gordillo's portion of damages would necessarily be proportionate to his share of fault. La. Civ. Code. art. 1804. And determining his proportionate share of fault would necessarily require determination of both Dr. Oms and Montelepre's fault. See Muphrey, 581 So. 2d at 361.  Thus, not only would liability issues be litigated, Montelepre's liability would have to be litigated.  And the latter proposition is precisely what the statute forbids.

18

"in the amount of malpractice liability insurance in force as provided for in La. R.S. 40:1299.42(B)(2)" once a victim settles with a provider and continues its action against the Fund. (footnote omitted). Section 40:1299.42 (B)(2) indicates that a qualified provider "is <u>not</u> liable for an amount in excess of One Hundred Thousand Dollars <u>plus</u> interest thereon accruing <u>after</u> April 1, 1991, for all malpractice claims ..." (emphasis added).

Whether the Fund may properly be held liable for interest accruing on the entire $500,000 depends upon the interpretation applied to subsections (D)(5) and (B)(2). There are at least two possible interpretations of these subsections. Under the first, (D)(5)'s reference to "the amount of malpractice liability insurance in force as provided for in [(B)(2)]" could be read to mean that the Fund receives a credit in an amount equal to only the $100,000 liability insurance limits which providers are required to maintain under the act. Under this interpretation, the Fund would not receive credit for any interest on the $100,000 as provided in subsection (B)(2). Thus, the Fund would be liable for interest on the total $500,000 award.

A second interpretation could read (D)(5)'s reference to (B)(2) to mean that the Fund should receive a credit in an amount equal to not only the $100,000 insurance limits, but also the "interest thereon accruing after April 1, 1991." However, applying this interpretation to the facts here would not change the result reached by the first interpretation. Dr. Oms and Montelepre settled with the Castillos on March 27, 1991, five days before the

April 1st date upon which interest would have begun to accrue. Thus, there was no interest in existence for which the Fund could have received a credit.

Because we find under either interpretation of the statute that the district court's award of interest on the entire $500,000 was not error, we will not decide which interpretation more accurately reflects the will of the Louisiana legislature.

In its second argument challenging the interest award, the Fund relies on the releases executed by Dr. Oms and Montelepre in their settlements with the Castillos. The Fund asserts that by releasing Dr. Oms and Montelepre from any claim to legal interest arising from their malpractice action, the Castillos necessarily released the Fund from liability for legal interest under the statute. The Fund offers no authority for its position.

The fundamental defect in the Fund's argument is that it overlooks the fact that the Castillos' had two independent claims for interest on two different sums. The Castillos' civil action against Dr. Oms and Montelepre gave rise to a claim for legal interest on any amount of damages they might recover in judgment against the providers. La. Rev. Stat. § 4203 (West 1993); La. Code Civ. Proc. art. 1921. The Castillos' action against the Fund gave rise to a right under the statute to receive legal interest against the Fund on any damage award up to the $500,000 cap. La. Rev. Stat. § 40:1299.47 (M). Thus, when the Castillos' compromised their action against Oms and Montelepre, they compromised their right to receive legal interest arising from only that action. Their action

20

against the Fund and concomitant right to legal interest under the statute was unaffected by the settlements.

The Fund's third point of error is overruled.[7]

D.    Medical Expenses

In its final point of error, the Fund contends that the court erroneously awarded the Castillos $280,000 in medical expenses on top of their $500,000 general damage award.  The Fund maintains that the $500,000 general damage award is inclusive of any award for past medical expenses.

This argument is contrary to the plain language of the statute.  Section 40:1299.42 (B)(1) clearly states that the $500,000 general damage award is "exclusive of future medical care and related benefits as provided in R.S. 40:1299.43."  Section 40:1299.43 (B)(1) states that "`Future medical care and related benefits' ... means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury." (emphasis added).  Thus, the district court correctly awarded the $280,000 in past medical expenses as an amount additional to it general damage award. Maxwell v. Soileau,

---

[7]As an alternative position, the Fund asserts that it is only liable for interest accruing on the $500,000 from "the date of judicial demand" up to the date the Castillos settled with Dr. Oms and Montelepre.  The plain language of the statute forecloses this argument.  Section 40:1299.47 M clearly states that interest shall accrue on "a judgment."  At the time of the Castillos settlement with Dr. Oms and Montelepre, there was no judgment.  Consequently, the district court properly determined the time of accrual.

561 So. 2d 1378, 1390 (La. App. 2d Cir. 1990) ("Additionally, it is well-established that the term `future medical care and related benefits' includes not only those expenses incurred after the date of trial but also those medical expenses incurred after the date of injury but before the date of trial. [numerous citations omitted] Therefore, under appropriate circumstances the court may award $500,000 plus all medical expenses incurred from the date of malpractice without exceeding the limit of recovery set forth in La. R.S. 40:1299.42.")

The Fund's fourth and final point of error is overruled.[8]

E.    The Bond

The district court found that under F.R.C.P. 62(f) the Fund was entitled to a stay of judgment without having to post a bond. The court concluded that the Louisiana legislature intended the Fund to be exempt from having to post a bond pursuant to the terms of La. Rev. Stat. § 13:4581. It also reasoned that the provisions under the Medical Malpractice Act by which judgments are paid provide sufficient security to protect the Castillos' right to recover on their judgment. On their cross-appeal, the Castillos assert that the district court erred by allowing the Fund to stay execution without posting a bond.

F.R.C.P. 62(f) provides:

---

[8]We note that the Fund also challenges the court's general and medical expense damages awards as lacking any evidentiary support. These arguments, however, are foreclosed by admissions contained in the Fund's response to the Castillos' motion for summary judgment.

22

> In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to a stay as would be available to the judgment debtor had the action been maintained in the courts of the state.

F.R.C.P. 62(f). The obvious purpose behind this rule is to allow appealing judgment debtors to receive in the federal forum what they would otherwise receive in their state forum. This purpose, however, is qualified by the requirement that the state forum treat judgments as a lien, or encumbrance, on the property of judgment debtors. The purpose behind this requirement is also plain: judgment creditors must be afforded security while judgment debtors appeal.

There is no question that the Fund is entitled to stay judgment without a bond under Louisiana law by virtue of the very recent amendment to section 13:4581. The amended section provides:

> § 4581. Public boards and commissions not required to furnish bond
> State, parish and municipal boards or commissions exercising public power and functions, sheriffs, sheriffs' departments, and law enforcement districts, and the Patients Compensation Fund, or any officer or employee thereof, shall not be required to furnish any appeal bond, or any other bond whatsoever in any judicial proceedings instituted by or brought against them, that arise from activities within the scope and course of their duties and employment.

The amended version was signed by the governor on June 10, 1993 and became effective August 15, 1993. Thus, applying the amended

23

provision retroactively, we find the Fund to be entitled to a stay without bond under Louisiana law.[9]

We believe that the Fund was entitled to a stay of execution without having to post a bond in federal forum as well. In this diversity action, great deference must be given to the manifest desire of the Louisiana legislature to allow the Fund to appeal without bond. We note that on May 24, 1993, the Louisiana Supreme Court declared that the Fund was not exempt from posting a bond under the then unamended section 4581. Rodriquez v. Louisiana Medical Mutual Insurance Co., 618 So. 2d 390, 394 (La. 1993). However, on June 10, 1993, the Governor approved the amended version of section 4581 that effectively overruled this decision by specifically exempting the Fund from having to "furnish any appeal bond, or any other bond whatsoever in any judicial proceedings."

Although we are convinced that the judgment against the Fund is not a lien on the monies contained in the Patient's Compensation Fund, we believe that the Medical Malpractice Act provides sufficient security to judgment creditors so as to satisfy the purpose behind the Rule 62(f) judgment as a lien requirement.[10] The

---

[9]We find that section 13:4581's exemption of the Fund from having to post a supersedeas bond is procedural in nature and effect and therefore should be applied retroactively to this litigation. Op. La. Att'y Gen. 93-486 (1993); Cf Southern Construction Co. v. Housing Authority of the City of Opelousas, 189 So. 2d 454, 458 (La. App. 3rd Cir. 1966) (holding that the provision of section 13:4581 relating to the furnishing of an appeal bond is purely procedural and therefore will be applied retroactively).

[10]In Louisiana, the filing of a judgment with the recorder of mortgages creates a "judicial mortgage." La. Civ. Code art. 3300. A judicial mortgage is established by law to secure a

24

Act provides for the satisfaction of judgments out of the Patient's Compensation Fund on a semi-annual basis. La. Rev. Stat. 40:1299.42 (B)(3)(a).  In the event that the fund would be depleted by the satisfaction in full of all such judgments, then the amount paid to each judgment creditor is to be prorated. Id. § 40:1299.44 (A)(7)(c). Any amounts left unpaid are to be paid in the following semi-annual periods. Id. § 40:1299.44 (A)(7)(d) & (e).  Thus judgment creditors are able to recover on their judgments.

The Castillos' point of error on cross appeal is overruled.

## IV.  Conclusion

The district court's judgment is AFFIRMED in all respects.

---

judgment. Id. art. 3284.  A judicial mortgage secures a judgment for the payment of money. Id. art. 3299.  Once filed, the judicial mortgage "burdens" all property of the judgment debtor that is susceptible of mortgage by paragraphs (1) through (4) of Louisiana Civil Code Article 3286. Id. art. 3302.  The property interests referenced in those paragraphs deal strictly with immovable or real property type interests. See Id. art. 3286. Thus, movable or personal property interests, including monies, are not subject to a judicial mortgage. See Id.; Succession of Macheca, 147 La. 164 84 So. 574 (1929).  Consequently, the monies contained in the Patient's Compensation Fund are not subject to a judicial mortgage.