UMBRELLA BANK, FSB, Appellant,

v.

Pamela Kaye JAMISON, James R. Kersh, Marsha G. Milligan, Trustee, and Randolph N. Osherow, Appellees.

Nos. CIV. A–06–CA–100LY, A–06–CA–206LY.

United States District Court, W.D. Texas, Austin Division.

May 26, 2006.

Douglas W. Alexander, Alexander Dubos Jones & Townsend, LLP, Austin, TX, Dana Livingston Cobb, Alexander Dubose Jones & Townsend, Austin, TX, Sabrina L. Streusand, Hughes & Luce, L.L.P., Austin, Brian Turner, Law Office of Brian Turner, Austin, TX, for UmbrellaBank, FSB, Appellant.

John Worthy Alvis, Attorney at Law, Austin, TX, James D. Jameson, Austin, TX, for Pamela Kaye Jamison, Debtor.

## ORDER ON MOTION FOR STAY OF JUDGMENT PENDING APPEAL AND REVIEW OF DETERMINATION OF SUPERSEDEAS BOND AMOUNT

YEAKEL, District Judge.

Before this Court in cause number A–06–CA–100–LY is the appeal of Umbrella Bank, FSB from the bankruptcy court's Amended Judgment in an adversary proceeding styled *In re: Pamela Kaye Jamison, Debtor, Umbrella Bank, FSB v. Pamela Kaye Jamison, James Kersh and Marsha Milligan, Trustee,* Case No. 03–15244–FM, Adversary No. 04–1055–FM, signed November 17, 2005.[1] Also pending in the same cause is Umbrella Bank's Motion For Stay Of Judgment Pending Appeal And For Review Of Determination Of Supersedeas Bond Amount filed February 24, 2006 (Clerk's Document No. 4), Appellees Pamela Jamison, her bankruptcy trustee Marsha Milligan, Jamison's former husband James Kersh, and his bankruptcy trustee, Randolph Osherow's response (Clerk's Document No. 8), and Appellant Umbrella Bank's reply (Clerk's Document No. 10). By its motion, Umbrella Bank asks this Court to modify the supersedeas bond amount of $1,672,891.80 set by the bankruptcy court to stay execution of the Amended Judgment on appeal. The amount represents the full amount of damages awarded by the bankruptcy-court judgment and two years of interest.[2] *See* Fed. Bankr.R. 8005; Fed.R.Civ.P. 62(d). Specifically, Umbrella Bank asks this Court to reduce the amount of the supersedeas bond to $167,780.84, an amount it contends is in accordance with the applicable Texas law. *See* Tex. Civ. Prac. & Rem.Code Ann. § 52.006 (West Supp.2005) ("Section 52.006").

On March 17, 2006, Umbrella Bank moved for a temporary stay of execution of the Amended Judgment while this Court

---

**1.** On November 7, 2005, the bankruptcy court signed a Judgment and a separate Memorandum Opinion with that court's findings and conclusions regarding the adversary proceeding. The bankruptcy court amended its judgment to reflect a change to the correct amount of the home-equity loan at issue from $525,000 to $595,000.

**2.** Umbrella Bank posits, without objection, that it has invoked the proper procedure for obtaining this Court's review of the bankruptcy court's order that set the supersedeas amount by filing its motion for review in the pending appeal of the underlying adversary proceeding, cause number A–06–CA–100–LY. However, in an abundance of caution, Umbrella Bank has also filed a separate notice of appeal from the bankruptcy court's order that established the amount of the supersedeas bond, which was docketed in this Court under cause number A–06–CA–206–LY. For purposes of determining issues related to supersedeas, the Court will consider these causes together.

considered the motion to review the supersedeas (Clerk's Document No. 9). After a hearing, at which all parties were represented by counsel, this Court granted the bank's motion and temporarily set supersedeas at $167,780.84 (Clerk's Order No. 14). Umbrella Bank has deposited $167,780.84, into the registry of this Court.

After considering Umbrella Bank's motion, the response, the reply, the arguments of counsel, the file, and the applicable law, this Court is of the opinion that the motion should be granted and that the amount of supersedeas to stay execution of the Amended Judgment pending appeal should be modified to $167,780.84.

### Background

The factual background and history of this case is set forth in the bankruptcy court's findings of fact in its November 7 Memorandum Opinion rendered in the underlying adversary proceeding. At issue are various transactions between Umbrella Bank, a chartered federal savings bank under Illinois law, and Jamison, Kersh, and their company, Texas Financial Corporation ("TFC") a wholesale mortgage business. Between 1998 and 2000, Jamison and Kersh, who were married at the time, along with other individuals, were shareholders, directors, and officers who operated TFC. TFC maintained operating account number 212061601 at the bank. Additionally, the bank extended to TFC a warehouse line of credit. In 1998 the bank extended to Jamison and Kersh a home-equity revolving line of credit, account number 285004736, in the original principal amount of $125,000. On April 17, 2000, the bank also extended a home-equity loan, account number 1115005872, to Jamison and Kersh in the amount of $595,000. The property at issue, located in Austin, Travis County, Texas, was the homestead of Jamison and Kersh.

Following an audit in early 2000, the bank's auditors expressed concern about TFC's warehouse line of credit, specifically TFC's inability to timely sell its loans in the secondary market. TFC was often past due or in an overdraft position regarding its accounts with Umbrella Bank. Among the several claims in the underlying adversary proceeding was Jamison and Kersh's claim that the bank conditioned the extension of the home-equity loan on using a portion of the proceeds to repay their earlier-created home-equity line of credit and to pay certain sums owed by TFC to the bank. The final HUD–1 Settlement Statement pertaining to the home-equity loan reflects a payment to the bank of $346,014.74 and a payment of $217,080.92 disbursed to Jamison and Kersh. According to the closing records, the title company wired the $346,014.74 payment to the bank pursuant to the written directions of Umbrella Bank loan officer Ralph Rosynek, who was overseeing the home-equity loan. Of the $346,014.74 paid to the bank, $226,089.74 was applied by the bank to repay Jamison and Kersh's home-equity revolving line of credit loan. As of the time of the bankruptcy-court hearing, the bank was unable to account for the application of the remaining $119,925.00. The bank contends that $68,000 of the funds were applied, at the request of Kersh, to TFC's overdrafts.

On June 27, 2001, Umbrella Bank determined that Jamison and Kersh's home-equity loan was in default, sent them a notice of acceleration, and demanded that they promptly pay $595,668.87. Up to this point, payments on the home-equity loan had been made by or on behalf of Jamison and Kersh in the total amount of $95,227.20. On December 14, 2001, counsel for Jamison and Kersh sent the bank a letter informing it that the home-equity loan was unlawful, the lien against the

homestead invalid, and the bank had violated Texas usury laws.

In April 2002, Umbrella Bank filed an application for judicial foreclosure of the home-equity deed-of-trust lien securing the home-equity loan signed by Jamison and Kersh in state district court in Travis County, Texas. Later in April, and before being served with the application for foreclosure, Jamison and Kersh filed a separate action in state district court, claiming that the bank's lien against their homestead was invalid, that the bank should be required to forfeit the principal and interest paid to it by Jamison and Kersh, that the loan charged an usurious interest rate, and they are entitled to recover from Umbrella Bank state statutory usury penalties, and attorney's fees. By an agreed order, the state court consolidated Jamison and Kersh's action with Umbrella Bank's foreclosure action. Following consolidation, Jamison and Kersh each filed voluntary petitions in bankruptcy pursuant to Title 11 United States Code, chapter 7. The filing of the bankruptcy petitions resulted in a stay of the state-court action. *See* 11 U.S.C. § 362(a)(1). In February 2004, the bankruptcy court lifted the stay and allowed the state-court action to proceed. Milligan, however, removed the state-court action to the bankruptcy court. *See* 28 U.S.C. §§ 157, 1334, 1452; Fed. Bankr.R. 7001, 9027 (trustee may remove state-court cause of action related to bankruptcy case and action will proceed as adversary proceeding before bankruptcy court). The property securing the home-equity loan was sold pursuant to a separate order of the bankruptcy court, and Milligan retains the proceeds of that sale pending further order of the bankruptcy court. The parties stipulated to amounts of attorney's fees, costs, and expenses each had incurred, and that such amounts were reasonable and necessary.

The bankruptcy court tried the adversary proceeding in November 2005, and ordered the following: (1) the $595,000 home-equity loan violates the Texas Constitution, therefore, it is invalid, unlawful, and unenforceable and Umbrella Bank must forfeit all principal and interest owed or paid by Jamison and Kersh under the loan;[3] (2) Umbrella Bank must repay to Jamison and Kersh all interest paid, $95,227.20; (3) Umbrella Bank violated Texas usury laws by charging and receiving interest in excess of the lawful rate, and as a penalty, must pay Jamison and Kersh $605,568.12;[4] (4) Umbrella Bank also violated Texas law by charging Jamison and Kersh in excess of double the maximum amount of lawful interest and, as an additional penalty, must pay them $779,078.67;[5] (5) Umbrella Bank must pay Jamison and Kersh's reasonable attorney's

---

**3.** *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(i), (x).

**4.** A creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle in connection with a transaction for personal, family, or household use is liable to the obligor for an amount that is equal to the greater of:

(1) three times the amount computed by subtracting the amount of interest allowed by law from the total amount of interest contracted for, charged or received; or
(2) $2,000 or 20 percent of the amount of the principal, whichever is less.

*See* Tex. Fin.Code Ann. § 305.001(a) (West Supp.2005).

**5.** In addition to the amount determined under Section 305.001, a creditor who charges and receives interest that is greater than twice the amount authorized by this subtitle is liable to the obligor for:

(1) the principal amount on which the interest is charged and received; and
(2) the interest and all other amounts charged and received.

*See* Tex. Fin.Code Ann. § 305.002(a) (West Supp.2005).

fees in specified amounts;[6] and (6) Umbrella Bank must pay Jamison and Kersh $1,625 for costs and expenses.

On December 19, Umbrella Bank moved in the bankruptcy court for a stay of the Amended Judgment pending appeal and that supersedeas be set at $167,780.84 under Texas law. The bank contends that in determining the amount of the bond, the bankruptcy court must consider Federal Rule of Civil Procedure 62(f) and Fifth Circuit authority, which leads to the conclusion that a federal court must look to state law to determine the amount of supersedeas required to stay execution of the judgment on appeal. *See* Fed.R.Civ.P. 62(f); *Castillo v. Montelepre, Inc.*, 999 F.2d 931, 942 (5th Cir.1993).

The bankruptcy court held a hearing on the motion, and after taking the matter under advisement, concluded that the amount of supersedeas should be set under Federal Rule of Civil Procedure 62(d) and ordered that to stay execution of the Amended Judgment pending appeal, Umbrella Bank must post supersedeas in the amount of $1,672,891.80. Umbrella Bank now asks this Court to reduce the supersedeas amount to $167,780.84, which it contends is the amount it would have been required to post to stay execution of the same judgment had the cause proceeded in Texas state court.[7] *See* Fed. R. Bankr.P. 8005 (motion to modify relief granted by bankruptcy court pending appeal).

## Analysis

■■■ In reviewing bankruptcy-court decisions, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir.1992). This court will not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *See* Fed. R. Bankr.P. 8013; *In re McDaniel*, 70 F.3d 841, 842–43 (5th Cir.1995). A finding of fact is clearly erroneous if, after review of all of the evidence, the Court is left with a firm and definite conviction that the bankruptcy court erred. *McDaniel*, 70 F.3d at 843. This Court reviews *de novo* the legal conclusions of the bankruptcy court. *Id.; In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir.1993).

■■■ In adversary bankruptcy proceedings Federal Rule of Civil Procedure 62 applies. *See* Fed. R. Bankr.P. 7062. Under Rule 62, an appellant judgment debtor complaining of a bankruptcy court's order may obtain a stay of execution on the judgment by posting a supersedeas bond. *See* Fed.R.Civ.P. 62(d). The purpose of a supersedeas bond is to preserve the *status quo* while protecting the nonappealing party's rights pending appeal. *See Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir.1979). There is no absolute requirement that an appellant post a supersedeas bond pending an appeal. However, the posting of a bond, entitles an appellant to a stay of execution pending

---

**6.** The Amended Judgment awards Jamison and Kersh the following reasonable attorney's fees: (1) $35,000 for preparation and trial; (2) $10,000 for appeal to the district court; (3) $5,000 for appeal to the court of appeals; (5) $2,500 for making or responding to a petition for certiorari, and (6) $5,000 for briefing on the merits and argument before the United States Supreme Court.

**7.** Umbrella Bank calculates this amount in the following manner: $95,227, the amount of interest paid by Jamison and Kersh on the home-equity loan that the bank must repay; $59,125, attorney's fees; $1,625, costs and expenses; and $13,428, post judgment interest. In other words the bank contends that Texas law requires it to post no more security than actual damages, interest, attorney's fees, and costs.

appeal. *Id.* at 1191. The bond also allows the judgment debtor to avoid the risk of satisfying the judgment only to find that restitution is impossible upon a reversal of the judgment at the conclusion of the appeal. *Id.* At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal. *Id.* Rule 62(d) does not by its terms precisely define the amount and conditions of a supersedeas bond. *Id.*

### Parties' arguments

Umbrella Bank presents the same arguments to this Court as it did to the bankruptcy court. The bank contends that Rule 62(f) applies and provides the Court guidance as to the amount the Court should set for the supersedeas bond. Rule 62(f) provides,

> In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state.

Fed.R.Civ.P. 62(f). The bank contends that the purpose behind Rule 62(f) is to allow the appealing judgment debtor to receive in the federal forum what it would have received had it proceeded to the same judgment in their state forum. *See Castillo,* 999 F.2d at 942. Further, the bank contends that the Texas Legislature has definitively expressed its intent that in Texas a judgment debtor may stay execution on a judgment pending appeal by posting a supersedeas bond in an amount equal to the sum of the amount of compensatory damages awarded by the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. Tex. Civ. Prac. & Rem.Code Ann. § 52.006(a) (West Supp.2005) ("Section 52.006"). The bank contends that this Court must give "great deference [to the] manifest desire of the [Texas] [L]egislature" in setting the amount of the bank's supersedeas bond, *Castillo,* 999 F.2d at 941, and that the bankruptcy court erred by declining to set the supersedeas bond amount in accordance with Texas law by including in the amount of the bond the penalty usury damages awarded by the Amended Judgment. The bank asks this Court to apply Texas law, modify, and exclude from the supersedeas bond amount the usury penalties assessed by the bankruptcy court.

Milligan[8] responds that Rule 62(f) should not apply in this cause because Texas is not a state in which a judgment constitutes a lien upon the property of a judgment debtor. She contends that the Fifth Circuit, albeit in a different context, has recognized that "no lien [exists] under Texas law by virtue of [a] judgment." *Fore v. United States,* 339 F.2d 70, 72 (5th Cir.1965). Further, "[a] money judgment, unsecured by any lien, is simply an adjudication, between plaintiff and defendant, that defendant owes plaintiff \$X." *Id.* She further asserts that under Texas law a properly drafted, authenticated, and filed abstract of judgment creates a judicial lien only on any real property of the judgment debtor in the specific county in which the abstract is recorded and indexed. *See* Tex. Prop.Code Ann. §§ 52.001–.043 (West 1995 & Supp.2005) (outlining requirements for establishment of lien against real prop-

---

**8.** Because, for purposes of this appeal, Appellees' interests do not diverge, they will be referred to collectively as "Milligan."

erty of Texas judgment debtor). Further Milligan argues that because "a judgment lien is statutorily created, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach." *See Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex. App.-Dallas 1988, writ denied).

Umbrella Bank replies to Milligan's arguments that, for purposes of Rule 62(f), Texas is a judgment-lien state because the steps one must take for making a judgment in Texas a judgment lien are ministerial-only clerical, nondiscretionary, and nonjudicial actions are required. Further the bank argues that no provision of Rule 62(f) requires that a judgment automatically constitute a judgment lien nor is there a requirement that a statewide judgment lien be created. Additionally, the bank argues that the approach used by the *Castillo* court should apply in this case. There, despite the fact that in Louisiana a judgment lien is established only upon the filing of a judgment with a local recorder, after giving great deference to other Louisiana state statutes, the judgment debtor was allowed to proceed without posting any supersedeas bond to stay execution of the judgment pending appeal. *Castillo*, 999 F.2d at 942. The bank argues that *Castillo* holds that the purpose behind Rule 62(f) is to "allow appealing judgment debtors to receive in the federal forum what they would otherwise receive in their state forum," and that the bank should be required to post the same amount of supersedeas it would have if the action had

proceeded to this judgment in Texas state court. *Id.*

### Texas law

■ In the wake of *Texaco, Inc. v. Pennzoil Co.*,[9] the Texas Legislature addressed the need for alternate security in appeals from money judgments. *See Isern v. Ninth Court of Appeals*, 925 S.W.2d 604, 605 (Tex.1996). In 1989 the Texas Legislature promulgated a statute that provided in causes in which the trial court rendered a money judgment,[10] the trial court could set the security to suspend execution of the judgment during an appeal in an amount less than the amount of the judgment, interest, and costs, if after notice to all parties and a hearing, it determined that posting the full amount would cause irreparable harm to the judgment debtor. *See* Act of May 20, 1989, 71st Leg., R.S., ch. 1178, § 1, 1989 Tex. Gen. Laws 4813 (provision was codified as Tex. Civ. Prac. & Rem.Code Ann. § 52.002). This law continued in effect until 2003, when the Texas Legislature repealed section 52.002[11] and promulgated Texas Civil Practice and Remedies Code section 52.006. Section 52.006 provides that "[W]hen a judgment is for money, the amount of security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." Section 52.006. Significant in the 2003 statute, is that the Texas Legislature removed the previous requirement that the judgment debtor make a showing to the trial court that posting the full amount of the judgment would cause irreparable harm.

---

9. *See* 729 S.W.2d 768 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

10. This provision did not apply to judgments rendered in a bond-forfeiture proceeding, a personal injury or wrongful death action, a

claim covered by liability insurance, or a workers' compensation claim.

11. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204 § 7.03, 2003 Tex. Gen. Laws 847, 863.

*See* Section 52.006. Thus, under current Texas law, a judgment debtor need post a supersedeas bond only in the amount of compensatory damages, interest for the estimated duration of the appeal, and costs awarded in the judgment to suspend execution of a money judgment. *Id.*

Texas law defines compensatory damages as "economic and noneconomic damages. The term does not include exemplary damages." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(8) (West Supp.2005). Additionally, exemplary damages are defined as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages." *Id.* at § 41.001(5). Amounts awarded pursuant to Texas usury statutes, under which the bankruptcy court awarded Milligan $1,384,646.79, are penal rather than compensatory in nature. *See* Tex. Fin.Code Ann. §§ 305.001(a), .007 (West Supp.2005); *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 475–76 (Tex.1988).

### Applying Federal Rule 62, Texas law, and Castillo v. Montelepre, Inc.

■ This Court concludes that to achieve the purpose of a supersedeas bond-to maintain the *status quo*—the amount of the supersedeas bond that Umbrella Bank must post to stay execution of the bankruptcy court's Amended Judgment pending appeal should be $167,780.84.

In reviewing Texas law, this Court agrees with Umbrella Bank that a judgment debtor must post only the amount of compensatory damages awarded by a money judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. This Court finds that if the bank had proceeded in Texas state court to the same judgment rendered by

the bankruptcy court, and thereafter appealed, it would not have been required to post a supersedeas bond in an amount that included the punitive usury penalties.

This Court is also guided by *Castillo,* in which the Fifth Circuit instructs, "great deference must be given to the manifest desire of the [state] legislature." *Castillo,* 999 F.2d at 942. *Castillo* affirmed the district court's decision to allow a judgment debtor to stay execution of a money judgment under Rule 62(f) without posting a supersedeas bond because the Louisiana Legislature's specific intent expressed in the state's statutes, was to exclude this particular state actor from having to post a supersedeas bond. *Id.* The *Castillo* court did not directly address the initial qualifier to Rule 62(f), that "in any state in which a judgment is a lien upon the property of the judgment debtor." Rather, the circuit noted that for a judgment to become a lien on real property in Louisiana, a prevailing party must register a judgment. *See id.* at 942 n. 10. This Court observes that the Louisiana process for creating a judicial mortgage is similar to the Texas process for creating a judgment lien. By implication, therefore, the ministerial act of recording an abstract of judgment in a Texas county suffices to satisfy Rule 62(f)'s requirement that "a judgment is a lien upon property of the judgment debtor." Fed. R.Civ.P. 62(f).

This Court must afford great deference to the manifest desire of the Texas Legislature, which is to afford judgment debtors in Texas the ability to suspend execution of a money judgment by posting a supersedeas amount that excludes any punitive or exemplary damages. *See Castillo,* 999 F.2d at 942. Further, this Court finds that the $1,384,646.79 usury penalties are in the nature of a windfall to Appellees. Unlike compensatory damages, these penalties are intended, principally, to punish

and deter creditor violators rather than to compensate victims. *See Olympia Equip. Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 797 (7th Cir.1986) (antitrust punitive damages awarded). This Court finds that the purpose of a supersedeas bond, to preserve the *status quo*, is met in this cause by setting a supersedeas amount that includes compensatory damages, interest during the estimated pendency of the appeal, and costs awarded by the judgment, in the amount of $167,780.84, which is also in accordance with the manifest desire of the Texas Legislature regarding amounts of security required for a supersedeas bond related to a money judgment.

### Conclusion

Having reviewed the motion, the response, the reply, the file, and the applicable law, this Court is of the opinion that the motion for stay pending appeal should be granted and that the supersedeas bond amount should be modified. The Court finds that the bankruptcy court did not err in setting the supersedeas bond pursuant to Rule 62(d), however, after considering *Castillo* and Texas law, this Court finds that the amount of the supersedeas bond ordered by the bankruptcy court should be modified and reduced to $167,780.84.

As Umbrella Bank deposited this sum into the registry of the Court on March 24, 2006, as security to effectuate a temporary stay, this Court finds that this sum should continue on deposit as security to effectuate a stay of the Amended Judgment in the underlying adversary proceeding pending appeal in this Court.

**IT IS ORDERED** that Umbrella Bank's Motion For Stay Of Judgment Pending Appeal And For Review Of Determination Of Supersedeas Bond Amount (Clerk's Document No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Order Regarding Umbrella Bank, FSB's Motion For Stay Of Judgment Pending Appeal And Determination Of Supersedeas Bond signed February 14, 2006, is **MODIFIED** to the extent that Umbrella Bank, FSB must post a supersedeas bond with this Court in the amount of $167,780.84 and **AS MODIFIED, IS AFFIRMED**.

**IT IS FURTHER ORDERED** that the $167,780.84 now on deposit in the registry of this Court remain on deposit as security to effectuate a stay of the bankruptcy court's Amended Judgment pending appeal in this Court.

As all issues presented in Civil Cause Number A–06–CA–206–LY have been addressed by this Order, the Court will close that cause by separate order.