581 So.2d 357 (1991)
Jean Edna MUMPHREY, as Tutor for, and on Behalf of Alan David Mumphrey, Jr., a Minor
v.
Ralph J. GESSNER, M.D., Walter H. Brent, Jr., M.D. Chalmette General Hospital, Inc., Sherman Bernard, Commissioner of Insurance and the Louisiana Patient's Compensations Fund.
No. 90-CA-2187.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*358 Stewart E. Niles, Jr., Deborah A. Van Meter, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee Ralph J. Gessner, M.D.
James E. Hritz, Rodney J. Lacoste, Jr., Stassi, Rausch & Giordano, Metairie, for defendants-appellants Ralph J. Gessner, M.D., Walter H. Brent, Jr. M.D., Chalmette General Hosp., Inc., Sherman Bernard Com'r of Ins. and the Louisiana Patient's Compensation Fund.
Before KLEES, LOBRANO and WARD, JJ.
KLEES, Judge.
The Louisiana Patient's Compensation Fund appeals the trial court's granting of summary judgment dismissing its third party demand against Dr. Ralph Gessner. We affirm.
This action arises out of a claim by Jean Edna Mumphrey on behalf of the minor, Alan David Mumphrey, for the wrongful death of his mother, Donna Mumphrey, on February 11, 1985, following complications which arose after Ms. Mumphrey underwent back surgery.
Plaintiff first submitted the claim to a medical review panel pursuant to La.R.S. 40:1299.41 et seq., the Medical Malpractice Act. On October 15, 1987, the panel found that Dr. Ralph Gessner and Dr. Walter H. Brent, Jr. had failed to comply with the appropriate standard of care as charged in the complaint of malpractice. The panel also found that the evidence did not support the conclusion that Chalmette General Hospital and Dr. Richard Foster had failed to meet the applicable standard of care.
On November 9, 1987, plaintiff filed a petition for damages against Drs. Brent, Gessner, and Foster, and Chalmette General Hospital. Subsequently, LAMMICO, the professional liability insurer for both Drs. Gessner and Brent, was also named as a party defendant.
Plaintiff reached a settlement in the amount of $100,000 with Dr. Brent. On June 28, 1989, the settlement and release of plaintiff's claims against Dr. Brent was judicially approved. On the same date, a motion to dismiss without prejudice LAMMICO, Dr. Gessner, Chalmette General Hospital and Dr. Foster was also filed and signed. Finally, plaintiff filed a fifth supplemental and amending petition against the Louisiana Patient's Compensation Fund, the Office of The Commissioner of Insurance of the State of Louisiana and the Office of the Attorney General of the State of Louisiana seeking excess damages and alleging an admission of liability by Dr. Brent pursuant to La.R.S. 40:1299.44(C)(5).
On September 13, 1989, the Fund answered and by third party demand sought contribution from Drs. Gessner and/or Foster and credit against plaintiff's recovery for said doctors' negligence. The Fund asserted it was entitled to make such a claim for credit to the full extent of the *359 statutory limits of liability of Drs. Gessner and Foster, due to their alleged negligence.
An exception of no cause of action, or alternatively motion for summary judgment, was filed by plaintiff claiming that as a matter of law, the settlement with Dr. Brent constituted a statutory admission of liability, and that the only issue to be litigated between the plaintiff and the Fund was the quantum of damages. By judgment dated March 1, 1990, the trial court ruled in favor of the plaintiff.
The issue of the Fund's right to contribution based on the alleged negligence of the third-party defendants, Drs. Gessner and Foster, was not addressed by the trial court's judgment. The court granted plaintiff's motion for summary judgment upholding the statutory admission of liability by Dr. Brent. The court also granted plaintiff's motion to sever, bifurcating plaintiff's trial for damages from the Fund's third-party demand for contribution.
Before plaintiff's trial on quantum began, a settlement was entered into between plaintiff and the Fund whereby plaintiff received $200,000 over and above the $100,000 already received from Dr. Brent. The settlement agreement was adopted by the trial court, and the motion and order of dismissal explicitly reserved the Fund's right to proceed against Dr. Gessner pursuant to its third-party demand for contribution.
In response to the Fund's third-party demand, Dr. Gessner filed a motion for summary judgment asserting that the Fund had no cause or right of action to seek contribution from him. The Fund asserted that it had a right to contribution against Dr. Gessner for damages it had paid to the original plaintiff through legal subrogation. On November 12, 1990, the trial court granted the motion for summary judgment, dismissing the third-party demand of the Fund against Dr. Gessner. The Fund has appealed devolutively from this judgment.
On appeal, the Fund contends that it is entitled to seek contribution from Dr. Gessner because: (1) As an obligor which has paid a debt it owes with or for another, the Fund has recourse against that other (Dr. Gessner) by means of the legal subrogation provided for in La.Civil Code art. 1829; and (2) Public policy mandates that the Fund be allowed to seek contribution from allegedly negligent health care providers in order to protect the fiscal integrity of the Fund. Conversely, appellee Dr. Gessner argues that the Fund has no right to seek contribution under the terms of R.S. 40:1299.44(C)(5), especially as that section has been interpreted by the Louisiana Supreme Court in Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied by Louisiana Patient's Compensation Fund v. Stuka, ___ U.S. ___, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990).
After reviewing the applicable law, we agree with the trial judge that the Fund has no right to seek contribution in this instance.
R.S. 40:1299.44(C)(5) states, in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
The instant case, like Stuka v. Fleming, supra, involves a suit against multiple health care providers after the plaintiff has settled with one of those health care providers for $100,000. In Stuka, the plaintiff had settled with one doctor for $100,000 and released with prejudice two other doctors, and was claiming excess damages from the Fund. The issue before the Court was whether the Fund, in its litigation with the plaintiff over quantum, could attempt to prove the liability of the two non-contributing doctors in order to get a potential $100,000 from each.
After stating that the statute does not expressly provide for a case in which multiple health care providers have been joined as defendants and only one pays $100,000 *360 in settlement, the Court held that the Fund could not litigate the issue of liability in order to get contribution from the other health care providers. Stuka v. Fleming, supra, 561 So.2d 1371. The Court noted that, after such a settlement has occurred between the malpractice victim and a health care provider, the status of the Fund is more in the nature of a statutory intervenor than a party defendant. Id. at 1374, citing Williams v. Kushner, 449 So.2d 455, 458 (La.1984). At that point, the only issue between the victim and the Fund is the amount of damages sustained by the victim. Id. The Court concluded by stating:
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.

Id. (Emphasis added).
Appellant argues that Stuka v. Fleming does not control this case because of two distinguishing factors: (1) In Stuka, the non-contributing health care providers were released with prejudice; whereas, in the instant case, Dr. Gessner was released without prejudice; and (2) Stuka only applies to the litigation between the malpractice victim and the Fund, which has ended in this case because the Fund has settled with the plaintiff, and only the Fund's claim for contribution remains. We find neither of these arguments to be persuasive.
Dr. Gessner's release without prejudice would be significant only if the Fund were subrogated to plaintiff's rights against him as a co-obligor under Civil Code article 1829(3). However, the Fund is not a co-obligor with liable health care providers. Our Supreme Court has stated that "[t]he fund is not a negligent party and does not have the status of an Article 2315 defendant." Koslowski v. Sanchez, 576 So.2d 470 (La. 1991), quoting Williams v. Kushner, 549 So.2d 294, 296 (La.1989). The Court termed the Fund "a third party with an interest in the proceedings when damages exceed $100,000. Koslowski, supra at 474.
According to the jurisprudence interpreting the Medical Malpractice Act, the position of the fund is sui generis; it is a creature of statute and has only those rights expressly given to it by the legislature. Therefore, in Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1221 and 536 So.2d 1222 (La.1989), this court held that the Fund did not have the right to urge the defense of prescription under Civil Code article 3453 once the health care provider had settled for its maximum liability. We stated:
Thus the Fund is limited by the provisions of the Medical Malpractice Act, the act which created it. We are of the opinion that the legislature did not intend to give the Fund equal status as a party defendant once the health care provider settled for its maximum liability. In those instances, the legislature reserved to the Fund only the right to contest the amount of damages and nothing more. We therefore conclude, under the factual scenario of this case, that the Fund was not given the status of "creditor or other person" within the meaning of Civil Code Article 3453.
Id. at 1334. Similarly, we hold in the instant case that the Fund does not have the status of a co-obligor under article 1829 and is not subrogated to the plaintiff's rights against the health care providers. Therefore, it makes no difference whether the health care provider has been released with or without prejudice.
Appellant's second argument is that the instant case is fundamentally different from Stuka v. Fleming because there is no *361 longer any litigation between the Fund and victim, as the Fund has settled with the plaintiff for $200,000. However, Stuka held that the Fund is precluded from litigating the issue of the liability of a non-contributing health care provider once there has been a settlement for $100,000. Even though the victim is no longer in the suit, the liability of Dr. Gessner to the victim would still have to be litigated in order to determine whether the Fund is owed contribution. As the Court stated in Stuka, the statute does "not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers." 561 So.2d at 1374. In view of this language, we find that the trial court was correct in holding that the Fund has no right to seek contribution in this case.
Finally, with regard to appellant's public policy argument, we find that the fiscal integrity of the Patient's Compensation Fund is adequately protected by the statute which created it, without granting it a right to contribution not contemplated by that statute.
Accordingly, for the reasons stated, we affirm the summary judgment of the trial court dismissing appellant's claim for contribution.
AFFIRMED.