| .MARION F. EDWARDS, Judge.
Defendant, the Louisiana Patient’s Compensation Fund (“PCF”) appeals a judgment of the district court in favor of the plaintiff, Ronald Harrison, in the amount of $439,915.00. We affirm.
The underlying facts which give rise to the present case, have been summarized by this court as follows:
This matter involves a medical malpractice claim by Ronald Harrison for the death of his wife, Doris Harrison, and his minor child, Avery Doyle Harrison.
Doris Harrison, a prenatal patient of Dr. T. Richard Smith, was admitted to Meadowcrest Hospital in labor at 12:10 a.m. on September 22, 1989. Prior to [95-517 La.App. 5 Cir. 2] this, Mrs. Harrison had informed Dr. Smith that she and her husband were Jehovah’s Witnesses and did not wish any blood products to be used at the time of the delivery of their child. Dr. Smith was called by the nurse on the delivery unit 30 minutes after the patient arrived, but he did not immediately proceed to the hospital.
At 9:45 a.m., Mrs. Harrison’s fetal heart monitor ceased reflecting a heartbeat for her unborn child, and the nursing staff asked Dr. Wayne Grundmeyer to deliver the baby. At 9:53 a.m., Dr. Grundmeyer opened the patient and delivered a male infant with the umbilical cord tightly wrapped around his neck. Dr. Grundmeyer had begun to close the patient when Dr. Smith arrived and took over.
At this point, Dr. Smith determined it was necessary to perform further surgery on Mrs. Harrison’s huterus. While the surgery was being performed, Mr. and Mrs. Harrison both vehemently refused the use of any blood and/or blood products.
After the surgery, in the recovery room, Mrs. Harrison’s condition began to worsen and she eventually died. An autopsy revealed the cause of death to be anemia and hypovolemia, which is a decrease in the amount of circulating blood.
The baby, Avery Doyle Harrison, died on October, 14, 1989, 21 days following his birth, from complications resulting from the umbilical cord that was wrapped around his neck.[1]
Ronald Harrison filed a medical malpractice claim and thereafter a suit against Dr. Grundmeyer, Meadowcrest, and Dr. Smith in 1992. In the petition, Harrison alleged that Dr. Smith was negligent in failing to adequately respond to the calls from the nursing staff regarding the deterioration of the mother and fetus, and in electing to perform an unnecessary procedure after his arrival. Pursuant to La. R.S. 40:1299.44(0(5), on May 19, 1994, plaintiff reached a court-approved settlement with Dr. Smith and his insurer, in the amount of $100,000.00. Mr. Harrison, in this settlement related to the claim for Doris, reserved his rights against the Louisiana Patient’s Compensation Fund for the full amount of damages recoverable. Also on May 19, 1994 Harrison reached a court-approved settlement with all involved parties regarding his claims on behalf of his minor child, Avery Doyle Harrison, in the amount of $40,000.00.
On October 21, 1994, Harrison filed a motion for summary judgment predicated *1067 on the fact that, under La. R.S. 40:1299.44(0(5), the $100,000.00 payment constituted an admission of liability by the health-care provider. Harrison further alleged there were no genuine issues of material fact which could result in a judgment against PCF in an amount less than the $400,000.00 allowed by the medical malpractice cap, plus medical expenses.
l40n December 13, 1994, the district court judge granted Harrison’s motion for summary judgment and entered judgment against PCF in the sum of $400,000.00, the amount allowed by the cap, and $62,515.04 in past medical expenses together with legal interest. On January 30, 1996 this Court rendered a decision vacating the trial court judgment and remanding the case to the District Court.[2] The Supreme Court denied writs.
Subsequent to these decisions, in May of 1996, Harrison filed a Motion for Partial Summary Judgment, seeking the immediate payment of all medical costs associated with the treatment of both Doris Harrison and Avery Doyle Harrison, $11,238.68 and $51,278.35 respectively. On August 20, 1996 the trial court granted the partial summary judgment.
In September, 1996 Harrison filed another Motion for Summary Judgment, once more seeking to be awarded the statutory maximum of $400,000.00 in damages. He based this motion on a then-recent decision of the Louisiana Supreme Court.[3] On November 14, the trial court granted summary judgment and awarded Harrison $400,000.00 plus costs and interest.
On appeal, this court reversed that judgment, again finding these damages were not susceptible to summary judgment.[4] We also amended the September judgment to exclude the medical expenses of Avery Harrison, finding that Mr. Harrison was barred by the settlement from asking for any further damages.
Mr. Harrison took writs to the Supreme Court, which reversed the portion of our opinion amending the partial summary judgment and excluding Avery’s medical expenses[5], directing the district court as follows:
Contested issues of fact appear to make a determination of whether and/or under what circumstances plaintiff is | ^entitled to pursue a claim relative to the medical treatment rendered to Avery Doyle Harrison inappropriate for resolution by summary judgment. In connection with the trial on the merits of plaintiffs claims, the trial court is directed to receive evidence on and to determine the following issues, either prior to trial or at the trial on the merits:
1. Whether liability is deemed admitted and plaintiff is entitled to pursue a claim to recover one maximum award of up to $500,000 in damages from the Louisiana Patient’s Compensation Fund (subject to credit for settlements paid) for the medical treatment and deaths of both Avery Doyle Harrison and Doris Harrison, plus medical expenses incurred; or
2. Whether plaintiff is entitled to pursue claims to recover two maximum awards of up to $500,000 each, plus medical expenses incurred, from the Louisiana Patient’s Compensation Fund in connection with the treatment of Avery Doyle Harrison and Doris Harrison (subject to credit for settlements paid) but with plaintiff being required to *1068 prove liability as to the claim relative to Avery Doyle Harrison; or
3. Whether any and all claims plaintiff may have against the Louisiana Patient’s Compensation Fund relative to the medical treatment of Avery Doyle Harrison are precluded by the settlement agreement entered into by Ronald Harrison, Individually and on behalf of his minor child, Avery Doyle Harrison; and
4. The extent to which the Louisiana Patient’s Compensation fund was a party to, ratified, or is otherwise estopped to complain of any agreements the court may find were made relative to the settlement agreements entered into by the plaintiff.
The parties may appeal the ruling of the trial court on these issues after a judgment on the merits.[6]
On remand, the trial court requested submission of memoranda on these issues and issued an advisory opinion in 1997. In August, 2000, Mr. Harrison filed a Rule to Show Cause why the advisory judgment should not be formally entered as the judgment in the record. In response, PCF filed an opposition and an Exception of Res Judicata. On October 20, 2000, a judgment was issued finding | fithat liability was deemed admitted as it pertained to the treatment of Mrs. Harrison, and that Mr. Harrison was entitled to pursue claims to recover two maximum awards of $500,000.00 each in damages from the PCF in connection with the medical treatment and death of Avery and Doris Harrison, plus medical expenses, but requiring Mr. Harrison to prove liability as to the claim relative to Avery. The PCF was further estopped from asserting as a defense the fact that in the settlement agreement regarding Avery, a reservation of rights to proceed against PCF was not included. No appeal was taken from this judgment. In November of 2000, the trial court also denied PCF’s exception.
In October 2001, the trial court heard various Motions in Limine, including Harrison’s motion to exclude any allegations or references to “plaintiffs contributory negligence.” In that judgment, the trial court found that the health care provider was one hundred percent at fault, refusing to relitigate liability or causation. The Court stated:
This is not the type of multiple injury case where the Court must distinguish between the original or apparent harm which the admission of liability encompasses a secondary harm. Here, there is no secondary harm to consider.
The quantum claims for Avery and Doris Harrison were bifurcated for trial. The claims for Doris were tried on October 29, 2001, following which trial the district court granted judgment in the amount of $439,915.00 plus interest, subject to the $100,000.00 credit. The claim on behalf of Avery was later settled. The PCF has appealed.
On appeal, PCF alleges that it was manifestly erroneous for the trial court to exclude all evidence of liability; that it was erroneous for the trial court to exclude evidence regarding consent forms releasing Dr. Smith from all liability for damages related to the refusal of Doris and Ronald Harrison to accept blood 17products, and that it was erroneous for the trial court to exclude evidence of comparative fault of the Harrisons, and to reduce damages proportionately.
Addressing the first issue as to whether it was manifestly erroneous for the trial court to exclude all evidence of liability, we note that the release agreement (regarding the claims on behalf of Doris) stated that the payment was “not *1069 an admission of liability or negligence, that this release shall in no way be construed as a determination of the negligence or freedom from negligence of any persons involved and that this release may in no way be construed to reheve me from any liability which I may have to any person, including those released hereunder as a result of my acts or omissions in connection with the subject injury.” The PCF urges that the agreement was a binding contract to settle the litigation and that absent fraud or misrepresentation, the agreement controls. In other words, according to the PCF, parties to an La. R.S. 40:1299.44(0(5) settlement can contractually abrogate the statutory admission of liability. The PCF avers that because a settlement agreement, or compromise, has the legal efficacy of a judgment under La. C.C. Art. 3078, it can form the basis of a plea of res judicata.
Under La. R.S. 40:1299.44(0(5), if the insurer of a health care provider has agreed to settle its liability on a claim against its insured and the claimant is demanding an amount in excess thereof from the patient’s compensation fund for a complete and final release, the liability of the healthcare provider is deemed admitted and established where the insurer has paid its policy limits of one hundred thousand dollars.
We do not determine at this time whether Dr. Smith or his insurer could have properly included this negation of liability clause into the agreement, nor do we address its effect as to the physician or insurer. Rather, it is clear that the settlement agreement, insofar as it purports to negate a determination of liability on the part of Dr. Smith, cannot alter the legislatively created status of the Fund. The |SPCF is more in the nature of a statutory intervenor than a defendant.[7] It is the payment of the $100,000.00 by a qualified health care provider, which triggers the admission of liability provision of the act,[8] and not the position of that provider vis-a-vis the malpractice victim.
Once the qualified health care provider (or its insurer) pays $100,000 to a medical malpractice victim, the admission of liability provision of R.S. 40:1299.44(0(5) is triggered and the only contested issue remaining between the victim and the Patient’s Compensation Fund is the amount of the victim’s damages in excess of the amount already paid. Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365, 372; Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. den., 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525; McCrory, 686 So.2d at 1063.[9]
Regarding a plea of res judicata available to the PCF, this court has previously stated:
We agree with the Fourth Circuit decisions in Rey[ v. St. Paul Fire and Marine Ins. Co., 665 So.2d 109 (La.App. 4 Cir. 1995)] and Miller, and find that the PFC does not have the right to raise the exception of prescription, and further is not entitled to raise any exceptions after the limitation of liability has been satisfied. The statutes and jurisprudence are clear that such payment is an admission of liability. The PCF does not stand in the shoes of the Defendant. It is a creature of the legislature created solely to pay the excess damages to an injured plaintiff who can prove that his *1070 excess damages were caused by the health care provider’s malpractice. To allow it to raise exceptions after the payment would be to permit it to raise defenses only given to a Defendant, which it is not. See: McCrory, 686 So.2d at 1064.[10]
As created by the Legislature and interpreted by the jurisprudence:
the Fund has two choices: either agree to the amount demanded or litigate the sole issue of the claimant’s damages. If it chooses not to pay the demanded amount, then subparagraph |9(C)(3) allows the Fund to file written objections “to the amount demanded” and thereby force the litigation of the claimant’s damages. * * * In the latter instance, the only issue to be litigated is the quantum of the claimant’s damages.[11]
Even if the contract is the law between the parties, the PCF was not a party to the compromise. Moreover, the release specifically reserved all rights to recover against the PCF “as legally owed”. Such rights clearly include the statutory admission. This assignment of error is without merit.
In its second and third assignments of error, the PCF urges that the court erred in excluding evidence of victim fault, specifically, medical consent forms signed by Mr. and Mrs. Harrison. The Harrisons were of the Jehovah’s Witness faith, and in September of 1989, Doris Harrison signed a “Refusal to Permit Blood Transfusion”, requesting that no blood or blood derivatives be administered to her. Mr. Harrison also signed such a form. The PCF argues that such forms, which purported to release the physician and hospital from liability, are contracts and thus Dr. Smith was released from all liability related to the refusal to accept 'blood. In so doing, the PCF is yet again attempting to wrest itself out of its statutorily imposed liability. At least insofar as the PCF is concerned, liability has been admitted, and the only contested issue is the amount of the victim’s damages.
The PCF also argues that the court erred in not considering the comparative fault of the Harrisons, who continued to refuse transfusions while at the hospital, after Mrs. Harrison’s surgery.
In litigating the issue of damages, the Supreme Court has required a plaintiff to prove his damages in excess of $100,000.00.[12] In so doing, it has now been | mdetermined that the PCF may present evidence before the jury that victim or third-party fault caused any of the excess damages.[13]
Although payment of $ 100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $ 100,000 resulting from the malpractice, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $ 100,000. Graham v. Willis-Knighton Med. Ctr., 97-0188 (La.9/9/97), 699 So.2d 365. Accordingly, that portion of the trial court’s judgment prohibiting the PCF from arguing or presenting evidence before the jury that victim *1071 or third-party fault caused any of the damages in this case is reversed.[14]
Conner requires the trier of fact to consider evidence of victim or third party fault in the trial of excess damages, i.e. whether this victim or third party fault contributed to claimed damages over $100,000.00.
The PCF argues that the Harrisons were clearly aware of the significance of their refusal to accept a blood transfusion, and urges that this was victim fault and the direct cause of Mrs. Harrison’s death. As we view the evidence of record, there is no question but that Mrs. Harrison died due to a lack of blood, and this fact does not appear to have been put at issue; neither is there any question that both Mr. and Mrs. Harrison refused any blood replacement or transfusion. At the trial for damages, the medical consent forms were proffered, along with depositions of several doctors on the medical review panel.
We find the argument of the PCF, that the trial court should have considered the release forms and evidence as to Mr. Harrison’s continuing rejection of blood transfusions, is specious at best, since the issue has already been determined in the trial court. This case has been before the court since 1992, and from the outset, the PCF has raised that defense. As early as 1994, a pre-trial order submitted by the PCF urged the comparative negligence of the Harrisons. Moreover, the PCF |nalleges in brief that the settlement with Dr. Smith confected in 1994, containing the clause (discussed above) that the payment was not to be construed as an admission of liability, was “in exchange for the plaintiffs’ refusal to accept blood and became the law of the case.” The matter was argued in the earlier hearings on summary judgment.
In its judgment of October 17, 2001, the trial court found that the settling health care provider was one hundred per cent at fault for Mrs. Harrison’s death, stating that there was no secondary harm to consider. Under the facts and evidence presented, the secondary harm to which the judgment refers can only be “victim fault.” It is clear from the record that the trial court had before it the issue and evidence of the various releases, and considered and rejected that defense by finding the health care provider completely at fault. Considering all the evidence in the records before us, we find no error in that determination.
Because of the preceding judgments, appeals, and various motions of the parties, we find the procedural posture of the case is somewhat unusual. Nevertheless, the court heard the matter in segments and in so doing, determined prior to the October 29 hearing that there was no victim fault. Thus, refusal to admit evidence on this point at that latter hearing was not error. These assignments of error are without merit.
For the foregoing reasons we affirm the judgment of the district court in favor of Ronald Harrison in the amount of $451,153.68, plus interest and costs. Costs of this appeal are taxed to the Louisiana Patient’s Compensation Fund.
AFFIRMED.

. Smith v. Harrison, 95-517 (La.App. 5 Cir. 1/30/96), 669 So.2d 3, 4.

. Id.

. Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La.9/5/96), 679 So.2d 893.

. Harrison v. Smith 96-1005 (La.App. 5 Cir. 4/29/97), 694 So.2d 1090.

. Harrison v. Smith 97-1402 (La.10/3/97), 701 So.2d 182.

. Id.

. Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. den., 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525; Mumphrey v. Gessner, 581 So.2d 357 (La.App. 4 Cir.1991).

. Id.

. McGrath v. Excel Home Care, Inc., 01-1270 (La.App. 5 Cir. 3/26/02), 810 So.2d 1283, 1287.

. Id., at 1288.

. Castillo v. Montelepre, Inc., 999 F.2d 931, 935 (5th Cir.1993); see also McCrory v. Jefferson Parish Hosp. Service Dist. No. 2, 96-624 (La.App. 5 Cir. 12/30/96), 686 So.2d 1060.

. Graham v. Willis-Knighton Med. Ctr., 97-0188 (La.9/9/97), 699 So.2d 365.

. Conner v. Stelly, 02-280 (La.1/30/02); 807 So.2d 827. Also Barbara Hall et ux. v. Brookshire Brothers Limited, Louisiana Patient's Compensation Fund, 2001-1506 (La.App. 3 Cir, 08/21/02); 831 So.2d 1010.

. Conner v. Stelly, supra.