United States Court of Appeals
Fifth Circuit

**F I L E D**

June 7, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-30591

LOUISIANA PATIENTS' COMPENSATION FUND OVERSIGHT BOARD,

Plaintiff-Appellee,

VERSUS

ST PAUL FIRE & MARINE INSURANCE CO.,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

A panel of this Court granted leave to appeal from an interlocutory order of the district court denying summary judgment to Defendant-Appellant St. Paul Fire & Marine Insurance Company ("St. Paul") on the claims filed by the Louisiana Patients' Compensation Fund Oversight Board (the "Board"). The complaint alleged St. Paul violated the insurer's duty of good faith and reasonable care under the Louisiana Medical Malpractice Act, LA. REV. STAT. ANN. § 40:1299.44C(7) (West 2005). Concluding that the statute provides no such cause of action, we reverse the decision of the district court, render judgment for St. Paul, and remand for

proceedings consistent with this opinion.

**I.**

The Louisiana Medical Malpractice Act, LA. REV. STAT. ANN. § 40:1299.41, *et seq*. (the "LMMA"), created the Patients' Compensation Fund (the "Fund") as a budgetary instrument of the state to hold monies in trust for the "use, benefit, and protection" of medical malpractice claimants and private health care provider members. LA. REV. STAT. ANN. § 40:1299.44A(1). The Fund's purpose is specific and limited: the satisfaction of "excess judgments against health care providers qualified under the [LMMA]." *United Med. Corp. of Louisiana v. Johns*, 798 So. 2d 1161, 1165 (La. Ct. App. 2001). The LMMA also created the Board, Plaintiff-Appellee in this cause, established in the office of the Governor. LA. REV. STAT. ANN. § 40:1299.44D(1)(a). The Board is responsible for the Fund and has "full authority under law, for the management, administration, operation and defense" of the Fund. *Id*. § 40:1299.44D(2)(a).

The Board filed suit against St. Paul in district court on the basis of diversity jurisdiction on August 1, 2000, alleging a continuing scheme of fraud in the adjustment and settlement of medical malpractice cases as well as a breach of duties under the LMMA. *See id*. § 40:1299.44C(7). The Board complained St. Paul convinced medical malpractice plaintiffs, who were contemplating settlement in the underlying malpractice actions, to accept a

2

reduced settlement from St. Paul, in exchange for establishing liability against the Fund, thereby depriving the Fund of credits and defenses grounded on the issue of liability. The Board claimed this fraud involved secret agreements and the concealment of information owed to the Fund under the LMMA. The Board sought damages based upon known underlying malpractice cases, as well as underlying cases unidentified prior to discovery. The Board prayed for declaratory relief, that is, in all cases where the Fund suffered a loss because of St. Paul's fraud or ill practices, St. Paul must indemnify the malpractice claimant for all sums recovered and that St. Paul is not entitled to the benefit of the medical malpractice cap on general damages established by the LMMA. Also, the Board requested monetary damages, including loss of credits for providers involved in the malpractice and loss of funds resulting from adverse judgments and settlements due to the fraud and ill practices of St. Paul.

Discovery proceeded, initially limited to seven representative, underlying medical malpractice claims. St. Paul moved for summary judgment on the basis of that discovery, arguing: (1) it owed no duty to the Fund, but rather only to its insureds; and (2) the Board's claims sought only and impermissibly to collaterally challenge valid settlements reached between plaintiffs, insured health care providers, the insurers, and the Fund. St. Paul also raised the procedural bar of prescription.

In December 2002, the district court denied St. Paul's motion

for summary judgment, concluding that St. Paul breached its duties under the LMMA and relevant Louisiana regulations by failing to give the Fund ten days' written notice of proposed compromises or settlements. *See* LA. ADMIN. CODE tit. 37, Part III, § 1101(C). The district court ruled, in relevant part, that St. Paul owed a duty to the Fund of "good faith and reasonable care both in evaluating the underlying plaintiffs' claim and in considering and acting upon settlement thereof." *See* LA. REV. STAT. ANN. § 40:1299.44C(7).

The district court granted supplemental discovery on an additional 39 underlying malpractice claims related to the Board's allegations, and after completion of this discovery, St. Paul filed motions for partial summary judgment: to dismiss two of the 46 underlying malpractice claims, *McNairn v. Roux* and *Lagars v. Andicare*, because they were prescribed and because St. Paul did not breach any duty to the Fund. The district court denied the motions.

St. Paul moved for reconsideration or in the alternative for leave to file an interlocutory appeal, and the district court denied reconsideration but granted St. Paul's request for interlocutory appeal. By written order, the district court supplemented the prior denial of summary judgment with citation to some evidence presented and a clarification that the denial was a determination that the Board's evidence was sufficient to survive summary judgment under Rule 56, not a ruling that St. Paul breached

4

its duty under the LMMA as a matter of law.  In granting the motion for interlocutory appeal, the district identified as material under 28 U.S.C. § 1292(b) the legal question of the interpretation of St. Paul's duties to the Fund under the LMMA.

## II.

We review the denial of a motion for summary judgment *de novo*, applying the same standard used by the trial court.  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  However, in this interlocutory appeal permitted under 28 U.S.C. § 1292(b), our review is limited.  *See Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004).  Our appellate jurisdiction under § 1292(b) extends only to interlocutory orders involving a "controlling question of law."  28 U.S.C. § 1292(b); *Malbrough*, 392 F.3d at 136.  Therefore, we do not review whether the Board presented sufficient evidence to raise a genuine issue of material fact to preclude summary judgment for St. Paul.  *See Malbrough*, 392 F.3d at 136 (citing Fed. R. Civ. P. 56(c); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000)).  Instead, we review only whether the district court erred in concluding that the LMMA provides a cause of action to the Board, on behalf of the Fund, against an insurer for a breach of § 40:1299.44(C)(7)'s duty of "good faith and reasonable care."  *See id.*  We review the district court's interpretation of the LMMA *de novo*, interpreting the statute as would the highest court of

5

Louisiana. *See Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 987-88 (5th Cir. 1992).

St. Paul raises primarily three challenges to the denial of summary judgment in its favor: (1) the LMMA does not provide the Board with a cause of action against St. Paul; (2) even if the LMMA does create a cause of action for damages, St. Paul did not breach a duty owed to the Fund because St. Paul's fiduciary duty to its insureds must prevail over any general good faith and reasonable care duty to the Fund; and (3) claims arising out of two underlying cases, *McNairn* and *Lagars*, are prescribed by Louisiana law. Given our limited appellate jurisdiction under § 1292(b), we reach only the first challenge, as the latter two involve review beyond the "controlling question of law."

## III.

Under the LMMA, a qualified health care provider "is not liable for an amount in excess of one hundred thousand dollars plus interest . . . for all malpractice claims because of injuries to or death of any one patient." LA. REV. STAT. ANN. § 40:1299.42B(2). All "damages in excess of the total liability of *all* liable health care providers, up to $500,000, are to be paid by the Fund." *Stuka v. Fleming*, 561 So. 2d 1371, 1373 (La. 1990); *see also* LA. REV. STAT. ANN. § 40:1299.42B(3).

Thus, in the case of a malpractice action against multiple health care provider defendants, the Fund's potential liability is

6

triggered as soon as any one health care provider settles with the plaintiff for $100,000, even if that settlement's terms include the release of all other potentially liable defendants. *See Stuka*, 561 So. 2d at 1374-75.

> The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages. Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.

*Id.* at 1374 (internal footnote omitted).

Thus, the Louisiana Supreme Court held that, where a single health care provider's insurance settled with the malpractice victim and the victim released all other defendants, the Fund is precluded from contesting the liability of the settling health care provider and the Fund is liable for excess damages. *Id.* at 1374-75. In so holding, the Louisiana Supreme Court relied upon the language of § 1299.44C, indicating that the Fund's duties of excess damage payment are triggered by the settlement of only one underlying defendant. *Id.* at 1373 (noting the statutory language providing "the insurer of *a* health care provider . . . has agreed to settle *its* liability").

The necessary result of the LMMA's provisions is that the Fund

enjoys fewer "rights . . . when claims against multiple health care providers are settled than when such claims are tried." *Id*. at 1374. Trial against multiple defendants permits the Fund to attempt to apportion fault, causation, and damages among more defendant providers, thereby reducing the ultimate burden it must bear in payment to the malpractice victim.

In *Mumphrey v. Gessner*, 581 So. 2d 357 (La. Ct. App. 4th Cir. 1991), *writ denied*, 587 So. 2d 694 (La. 1991), the underlying plaintiff sued multiple provider defendants and then settled on the terms that one provider paid the statutory limit of $100,000 and the others were released. The settlement was approved, but the Fund challenged it via a third-party action against the dismissed provider defendants. *Id*. at 358-59. Relying in part on *Stuka*, the court held that the Fund, tethered to the language of the LMMA, could not seek contribution from the settling defendants through the collateral challenge. *Id*. at 359-60.

This Circuit has previously relied upon *Stuka* and *Mumphrey* in holding that the Fund lacks "authority under the statute to apportion fault amongst providers and reduce its liability by the non-qualified provider's share." *Castillo v. Montelepre, Inc.*, 999 F.2d 931, 937-39 (5th Cir. 1993). *Castillo* addressed the Fund's attempt to challenge the underlying settlement and rejected the Fund's policy arguments in support of that attempted challenge. *Id*. at 934-35. In so doing, *Castillo* relied upon the duty owed by

8

insurers to the Fund under the language of the LMMA. *Id*. at 936-37. "For the benefit of both the insured and the [Fund], the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof." LA. REV. STAT. ANN. § 40:1299.44C(7). Based upon this statutory duty, *Castillo* offered: "Why would the legislature have imposed upon the insurer, for the benefit of the Fund, a duty of good faith and reasonable care in its decision to settle a claim if the Fund has the greater right to challenge any settlement that would lock it into liability?" *Castillo*, 999 F.2d at 935-36. This query formed the basis of the district court's decision in this case to permit the Board's claims to survive summary judgment.

St. Paul argues that these cases limiting the Board's ability to challenge underlying settlements require the dismissal of the Board's claims here because they are simply a recharacterization of the Board's prior unsuccessful attempts to litigate liability in order to reduce the financial exposure of the Fund after a malpractice plaintiff has settled with a qualified defendant for $100,000. The Board responds that its claims do not challenge the underlying settlements and do not seek to relitigate the underlying liability and damages. Instead, the Board argues it seeks damages for St. Paul's fraudulent conduct, based upon the injury caused to the Fund in the underlying settlements.

9

We agree with St. Paul. Here, the Fund attempts to collaterally challenge the complete and effected settlements in underlying malpractice actions by claiming against one of the health care provider insurers, as opposed to the health care provider. *See Stuka*, 561 So. 2d at 1374; *see also Turner v. Southwest La. Hosp. Ass'n.*, 856 So. 2d 1237, 1240-41 (La. Ct. App. 3d Cir. 2003), *writ denied*, 876 So. 2d 89 (La. 2004) (approving *Stuka*). The Board's complaint so illustrates: "Further, The [Fund] through the [Board] prays for declaratory judgment, [requiring] in all cases where the Fund has suffered a loss or has or may be adversely affected because of the fraud and ill practices of St. Paul, that St. Paul, rather than the Fund, must indemnify the malpractice claimant for all sums recovered thereby and that St. Paul is not entitled to the benefit of the medical malpractice cap on general damages established by the Act."

The LMMA and the Louisiana Supreme Court's interpretation of that Act make clear that the Louisiana legislature did not provide the Fund with the cause of action it seeks to create here. Nowhere in the LMMA is the Fund, or the Board on the Fund's behalf, given the authority to challenge prior malpractice settlements by instituting fraud claims against the insurer of a health care provider. Rather, the LMMA provides a regulatory structure through which the Board manages the Fund and administers the system created in Louisiana within which both insurers and health care providers

10

work.  *See* LA. REV. STAT. ANN. § 40:1299.44D(2)-(3).  Under the Administrative Code, an insurer that fails to comply with requirements may be terminated from enrollment with the Fund.  *See* LA. ADMIN. CODE tit. 37, Part III, § 519.  And, in the event that an insurer fails to meet its duty to timely remit the surcharge to the Fund, then the Fund may assess a penalty or a revocation or suspension of the insurer's certificate of authority.  LA. REV. STAT. ANN. § 40:1299.44A(3)-(4).

Similarly, St. Paul suggests that with respect to the insurer's duty of good faith and reasonable care, the Louisiana legislature's failure to provide an express enforcement action leaves available to the Fund only administrative remedies.  In the absence of a legislative directive to the contrary and in the face of *Stuka* and *Mumphrey*, interpreting the LMMA to preclude the Board from litigating liability of the underlying malpractice claims, we agree.  The Board argues that its ability to bring a fraud or tort claim, on behalf of the Fund, against St. Paul stems from the LMMA's provision for defense of the Fund.  *See* LA. REV. STAT. ANN. § 40:1299.44D(2).  Subsection (D)(2) of § 40:1299 enumerates the Board's powers related to management, administration, operation, and defense, of the Fund "[i]n addition to such other powers and authority elsewhere expressly or impliedly conferred on the board by this Part" and "to the extent not inconsistent with the provisions of this Part."  *Id*. § 40:1299D(2)(b).  The LMMA empowers

11

the Board to defend the Fund from claims and to obtain indemnity and reimbursement to the Fund. *Id*. § 40:1299D(2)(b)(x)-(xi). The Board asks this Court to read these provisions, in combination with the duty of good faith and reasonable care owed by insurers to the Fund under § 40:1299.44C(7), to create the cause of action here presented. In the absence of the Louisiana legislature's express language so providing and in light of the Louisiana Supreme Court's interpretation of the LMMA in *Stuka* and *Mumphrey*, we decline to do so. The cause of action alleged by the Board is not expressly granted by the governing statute, and, to the extent the Board seeks additional enforcement powers on behalf of the Fund under the LMMA, its pleas must be addressed to the Louisiana legislature.

## IV.

Having concluded that the LMMA and Louisiana law do not provide the Board with the cause of action stated here against St. Paul, we need not, and under § 1292(b)'s limited appellate jurisdiction cannot, reach St. Paul's additional challenges to the district court's denial of summary judgment. After review of the record on appeal, the briefs and oral arguments of the parties, and for the foregoing reasons, we REVERSE the district court's denial of summary judgment, RENDER judgment to St. Paul on the claims alleged by the Board, and REMAND for such further proceedings as may be necessary in light of this opinion.

**REVERSED; RENDERED; and REMANDED.**

12