# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 15, 2022

Lyle W. Cayce
Clerk

No. 21-20202

---

Scott Easom; Adrian Howard; John Nau,

*Plaintiffs—Appellants*,

*versus*

US Well Services, Incorporated,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2995

---

Before Stewart, Clement, and Elrod, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Scott Easom, Adrian Howard, and John Nau (collectively, "Appellants") filed this interlocutory appeal seeking reversal of the district court's order denying their motions for summary judgment and reconsideration. In its order denying Appellants' motions, the district court certified two questions for interlocutory appeal: (1) Does COVID-19 qualify as a natural disaster under the Worker Adjustment and Retraining Notification Act's ("WARN Act" or "the Act") natural-disaster exception, 29 U.S.C. § 2102(b)(2)(B)?; (2) Does the WARN Act's natural-disaster

exception, 29 U.S.C. § 2102(b)(2)(B), incorporate but-for or proximate causation?

In response, we hold that the COVID-19 pandemic is not a natural disaster under the WARN Act and that the natural-disaster exception incorporates proximate causation. We therefore REVERSE and REMAND for proceedings consistent with this opinion.

## I.    FACTS & PROCEEDINGS

Appellants filed a class action complaint against their former employer, US Well Services, Inc. ("US Well") for allegedly violating the WARN Act by terminating them without advance notice. The WARN Act requires covered employers to give affected employees sixty days' notice before a plant closing or mass layoff. 29 U.S.C. § 2102(a). The Act provides three exceptions to the notice requirement—including the natural-disaster exception, under which no notice is required. *Id.* § 2102(b).

By way of background, oil producers hire US Well to perform hydraulic fracturing services known as fracking. When the price of oil drops below a commercially viable price, oil producers—including those that hire US Well—often discontinue work. In early March 2020, oil prices plummeted to historic lows due to a price conflict between Saudi Arabia and Russia. This effect was compounded by a decline in travel and decreased demand for oil and gas during the COVID-19 pandemic. As a result, several of US Well's customers curtailed or completely shut down the fracking work US Well had been performing at multiple well sites in Texas. When crew members, including Appellants, returned from the well sites to their respective headquarters after shutting down operations, they were immediately informed that they were laid off. Appellants' termination letters, dated March 18, 2020, and effective immediately, stated: "Your termination of employment is due to unforeseeable business circumstances resulting from a lack of available customer work caused by the significant

2

drop in oil prices and the unexpected adverse impact that the Coronavirus has caused."

Appellants filed this suit on August 26, 2020, and amended their complaint on October 14, 2020. The parties cross-moved for summary judgment. US Well argued that COVID-19 was a natural disaster under the WARN Act, and consequently, that it was exempt from the WARN Act's notice requirement pursuant to the natural-disaster exception. Appellants countered that COVID-19 was not a natural disaster and was not a direct cause of their layoffs. The district court concluded that COVID-19 was a natural disaster and that the natural-disaster exception uses but-for causation standards. It denied both motions for summary judgment, however, on grounds that the record did not show whether COVID-19 was the but-for cause of the layoffs. Appellants moved for reconsideration or, in the alternative, certification of three questions for interlocutory appeal. The district court denied the motion for reconsideration but certified two questions for interlocutory appeal: (1) Does COVID-19 qualify as a natural disaster under the WARN Act's natural-disaster exception?; (2) Does the WARN Act's natural-disaster exception incorporate but-for or proximate causation?

## II.   STANDARD OF REVIEW

"Although we ordinarily review a district court's summary judgment ruling de novo, our appellate jurisdiction under § 1292(b) extends only to controlling questions of law, thus, we review only the [questions] of law certified for appeal." *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir. 2005). We do not review whether either party has shown "that there is [a] genuine dispute as to any material fact" under Rule 56. FED. R. CIV. P. 56(a); *see La. Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005); *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004). Instead, we determine de novo whether the

district court properly interpreted the WARN Act's natural-disaster exception. *See Tanks*, 417 F.3d at 461.

## III.    ANALYSIS

The WARN Act prohibits an employer from ordering "a plant closing or mass layoff until the end of a [sixty]-day period after the employer serves written notice of such an order" to affected employees. 29 U.S.C. § 2102(a). Employers who violate § 2102 are required to provide aggrieved employees "back pay for each day of violation." *Id.* § 2104(a)(1)(A). "To prove a WARN Act claim, a plaintiff must demonstrate that: (1) the defendant was 'an employer'; (2) the defendant ordered a 'plant closing' or 'mass layoff'; (3) the defendant failed to give to the plaintiff sixty days['] notice of the closing or layoff; and (4) the plaintiff is an 'aggrieved' or 'affected' employee." *In re TWL Corp.*, 712 F.3d 886, 897 (5th Cir. 2013) (quoting §§ 2102, 2104).

"If a plaintiff establishes these requirements, the employer may avoid liability by proving that it qualifies for the Act's 'faltering company' exemption, or that the closing or layoff resulted from 'unforeseen business circumstances' or a 'natural disaster.'" *Id.* at 897–98 (citing 20 C.F.R. § 639.9 (1989)). Relevant here, the WARN Act's natural-disaster exception provides that "[n]o notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States." 29 U.S.C. § 2102(b)(2)(B).

Section 2107(a) of the WARN Act requires the Secretary of Labor to "prescribe such regulations as may be necessary to carry out this chapter." 29 U.S.C. § 2107(a). "Such regulations shall, at a minimum, include interpretative regulations describing the methods by which employers may provide for appropriate service of notice as required by this chapter." *Id.* To

that end, the Department of Labor has explained the following regarding the natural-disaster exception to the notice requirement:

> (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
> (2) To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.
> (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in [20 C.F.R.] § 639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.
> (4) Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.

20 C.F.R. § 639.9(c)(1)–(4) (the "DOL regulation"). Further, the Department of Labor has clarified that "[t]he employer bears the burden of proof that conditions for the exceptions have been met." *Id.* § 639.9. We now turn to the certified questions.

 A. *Whether COVID-19 qualifies as a natural disaster under the WARN Act's natural-disaster exception*

Appellants argue that COVID-19 does not qualify as a natural disaster under the WARN Act. We agree.

When interpreting a statute, a court must "start with the specific statutory language in dispute." *Murphy v. Smith*, 138 S. Ct. 784, 787 (2018). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Because the WARN Act does not define "natural disaster," we turn to the "ordinary meaning of the word . . . as understood when the [Act] was enacted." *See Carcieri v. Salazar*, 555 U.S. 379, 388 (2009). "Ordinarily, a word's usage accords with its dictionary definition." *Yates v. United States*, 574 U.S. 528, 537 (2015). "But we do not 'make a fortress out of the dictionary.'" *Chapman v. Durkin*, 214 F.2d 360, 362 (5th Cir. 1954) (quoting *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 764 (1949)).

When the WARN Act was enacted in 1988, the term "natural disaster" was not yet defined in leading dictionaries. *See, e.g.*, Webster's New World Dictionary (3d coll. ed. 1988); The Random House Dictionary of the English Language (2d unabridged ed. 1987); Webster's Third New International Dictionary of the English Language (1976). So, our dictionary-based analysis of the term is limited to combining two component definitions. Taking the terms in isolation, "natural" was defined as "of or arising from nature; in accordance with what is found or expected in nature" and "produced or existing in nature; not artificial or manufactured." *Natural*, Webster's New World Dictionary (3d coll. ed. 1988). "Disaster" was defined as "any happening that causes great harm or damage; serious or sudden misfortune; calamity." *Disaster*, Webster's New World Dictionary (3d coll. ed. 1988). The district court reasoned that COVID-19 qualified as "natural" because human beings did not start or consciously spread it. *Easom v. US Well Servs., Inc.*, 527 F. Supp. 3d 898, 908 (S.D. Tex. 2021). It further reasoned that COVID-19 qualified as a "disaster" based on how many people were killed or infected by the virus. *Id.* Although the dictionary definitions of the words "natural" and "disaster" bear consideration, they are not dispositive of the meaning of "natural disaster" in the WARN Act. *See Yates*, 574 U.S. at 538.

To supplement our combined dictionary definition of "natural disaster," we consider the term's statutory context. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). The natural-disaster exception provides that "[n]o notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, *such as* a flood, earthquake, or the drought currently ravaging the farmlands of the United States." 29 U.S.C. § 2102(b)(2)(B) (emphasis added). Congress's use of the term "such as" "indicat[es] that there are includable other matters of the same kind which are not specifically enumerated by the standard." *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8th Cir. 1981) (relying on dictionaries from 1967 to 1971). By providing three examples after "such as," Congress indicated that the phrase, "natural disaster" includes events of the same kind as floods, earthquakes, and droughts. Traditional canons of statutory construction further support this interpretation.

In the proceedings below, Appellants argued that the district court should apply the canon of *noscitur a sociis. Noscitur a sociis* means "it is known by its associates." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 287 (2010). This canon "counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). The district court rejected Appellants' argument on grounds that the phrase, "any form of natural disaster" signaled intentional breadth. *Easom*, 527 F. Supp. 3d at 910. But the Supreme Court has applied *noscitur a sociis* even where a list

begins with the word "any,"[1] thus, we apply that canon here. Courts rely on the canon of *noscitur a sociis* to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates*, 574 U.S. at 543. Applying *noscitur a sociis* to this case, the appearance of "natural disaster" in a list with "flood, earthquake, or drought" suggests that Congress intended to limit "natural disaster" to hydrological, geological, and meteorological events.

The canon of *expressio unius est exclusio* is also helpful here. It means that where, as here, "the items expressed are members of an 'associated group or series,' [that] justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). By the late 1980s, Congress was familiar with pandemics and infectious diseases—for instance, H1N1 (1918), H2N2 (1957-1958), and H3N2 (1968). *See Past Pandemics*, Ctrs. for Disease Control & Prevention (Aug. 10, 2018), https://www.cdc.gov/flu/pandemic-resources/basics/past-pandemics.html. As early as 1938, Congress specified coverage for "plant disease" in the Federal Crop Insurance Act, which authorized federal crop insurance to help agriculture recover after the Dust Bowl. 7 U.S.C. § 1508(g)(5)(A). So, by the time agriculture was hit by the North American drought of 1988, Congress knew how to, and could have, included terms like disease, pandemic, or virus in the statutory language of the WARN Act. That it chose not to justifies the inference that those terms were deliberately excluded. *See Barnhart*, 537 U.S. at 168.

---

[1] *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 544 (2015) (holding that fish were not included within the term "tangible object" under the Sarbanes-Oxley Act because "tangible object" appeared in a list that began "any record [or] document" and thus must refer to tangible objects used to record or preserve information).

Finally, we recognize that the WARN Act was "adopted in response to the extensive worker dislocation that occurred in the 1970s and 1980s." *Hotel Emps. & Rest. Emps. Int'l Union Loc. 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999). Under the Act, employers are required to provide notice to employees and to local government agencies to allow "some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a). This court has observed that the WARN Act's exceptions permitting a reduction of the notice period run counter to the Act's remedial purpose and thus, are to be "narrowly construed. " *Carpenters Dist. Council of New Orleans v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir. 1994); *see also San Antonio Sav. Ass'n v. Comm'r*, 887 F.2d 577, 586 (5th Cir. 1989) (noting the "general principle of narrow construction of exceptions"). We therefore decline to expand the definition of "natural disaster" beyond what is justified by the Act's statutory language, context, and purpose.

Accordingly, we hold that COVID-19 does not qualify as a natural disaster under the WARN Act's natural-disaster exception.

## B. *Whether the WARN Act's natural-disaster exception incorporates but-for or proximate causation*

Appellants contend that the phrase "due to" in the natural-disaster exception requires proximate cause. In the alternative, they argue that the phrase, "due to" is ambiguous and that this court should thus defer to the DOL regulation requiring an employer to "demonstrate that its plant closing or mass layoff is a direct result of a natural disaster." 20 C.F.R. § 639.9(c)(2). We agree that deference is appropriate here.

We first consider "whether Congress has directly spoken to the precise question at issue," here, whether the phrase "due to" in the natural-

disaster exception requires but-for or proximate causation.[2] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Congress has not. When "the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* at 843. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

In light of these principles, we recognize that Congress explicitly left a gap for the Department of Labor to fill by requiring the Secretary of Labor to "prescribe such regulations as may be necessary to carry out [the WARN Act]." 29 U.S.C. § 2107(a). The Department of Labor's interpretation is not arbitrary, capricious, or manifestly contrary to the Act. Thus, we give

---

[2] The district court began its causation analysis by reasoning that "due to" means "because of." *Easom*, 527 F. Supp. 3d at 912. It then cited *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020), *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 64 n.14 (2007), and *Burrage v. United States*, 571 U.S. 204, 214 (2014), where the Supreme Court stated that "because of" incorporates but-for causation. But none of those cases held that "because of" necessarily excluded proximate causation. Indeed, neither *Bostock* nor *Safeco* mention proximate causation. The Sixth, Tenth, and D.C. Circuits have concluded that the phrase, "due to" is ambiguous. *See U.S. Postal Serv. v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1268 (D.C. Cir. 2011); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999); *Adams v. Director, OWCP*, 886 F.2d 818, 821 (6th Cir. 1989). Specifically, the D.C. Circuit has observed that "[t]he phrase 'due to' is ambiguous [because it] 'has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other.'" *U.S. Postal Serv.*, 640 F.3d at 1268 (quoting *Kimber*, 196 F.3d at 1100). We are persuaded by this reasoning and conclude the same.

controlling weight to the DOL regulation, 20 C.F.R. § 639.9(c)(2): "To qualify for [the natural-disaster] exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster."

Supreme Court and Fifth Circuit precedent equate direct causation and proximate causation. *See, e.g.*, *Paroline v. United States*, 572 U.S. 434, 444 (2014) ("The idea of proximate cause . . . . generally 'refers to the basic requirement that . . . there must be "some direct relation between the injury asserted and the injurious conduct alleged[.]"'"); *Dixie Pine Prods. Co. v. Md. Cas. Co.*, 133 F.2d 583, 585 (5th Cir. 1943) ("It is well settled that the words 'direct cause' ordinarily are synonymous in legal intendment with 'proximate cause[.]'"). This precedent leads us to the conclusion that the DOL regulation's "direct result" requirement imposes proximate causation.

US Well argues that the DOL regulation's direct causation requirement would require the natural disaster to be the sole cause of the mass layoff and would foreclose the application of the natural-disaster exception in any case with an intermediate event between the natural disaster and the layoff. It points to instances such as when a hurricane causes a power outage, which in turn causes layoffs, or when Hurricane Katrina caused a breach of the levees, which in turn caused the city of New Orleans to flood and forced businesses to shut down. But this argument belies traditional proximate cause principles.

The Supreme Court has explained that "[a]s a general matter, to say one event proximately caused another is a way of making two separate but related assertions." *Paroline*, 572 U.S. at 444. "First, it means the former event caused the latter." *Id.* "This is known as actual cause or cause in fact." *Id.* Second, "[e]very event has many causes . . . and only some of them are proximate"—to wit, those "with a sufficient connection to the result." *Id.* So proximate cause is not synonymous with sole cause. A proximate cause

requirement merely "serves, *inter alia*, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.* at 445.

Under Texas law, "there can be more than one proximate cause of an injury," but "a new and independent, or superseding, cause may 'intervene[] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause.'" *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (alteration in original) (citation omitted). "In assessing whether an intervening cause disrupted the causal connection between the [initial cause] and the plaintiff's harm and constitutes a new and independent cause, [Texas courts] consider a variety of factors, including foreseeability." *Id.* at 98.

Here, flooding, power outages, layoffs, and shutdowns are among the reasonably foreseeable consequences of hurricanes and other natural disasters. Thus, imposing a proximate cause requirement on employers that must lay off employees due to a natural disaster would not foreclose the natural-disaster exception for all cases involving an intermediate cause.

Accordingly, based on the DOL regulation's "direct result" requirement and binding precedent equating direct cause with proximate cause, we hold that the WARN Act's natural-disaster exception incorporates proximate causation.

## IV.    CONCLUSION

For the reasons set forth above, we REVERSE the order of the district court and REMAND for further proceedings consistent with this opinion.